## CRASSEN v. SWOVELAND.

MORTGAGE—WHAT COSTITUTES.—Where A borrows of B a sum of money, and gives his note therefor, and at the same time executes a deed conveying certain real estate. to B, reciting in the deed a consideration just equal to the note, and, at the same time B executes a bond to A, conditioned that, upon the payment by A of said note, he would reconvey said real estate to him, the facts, taken together, constitute *prima facie* a mortgage of the real estate by A to B.

PRACTICE—AMENDMENT.—An amendment of a complaint by leave of the Court, pending a trial, if the amendment added nothing to the material averments of the complaint, could not be a fatal error, nor, in such case, could the failure to re-swear the jury after such amendment.

PRACTICE—JUDGMENT UPON ANSWERS OF JURY TO INTERROGATORIES.—Where specific interrogatories are propounded to a jury to be answered by them unconditionally, and they seem to be so framed as to cover what appears to be the substance of the whole case, and they are fully answered by the jury, but the jury make no general verdict, the Court may well render judgment in accordance with such answers, because the course of the parties in the premises would fairly indicate an intention or consent to waive a general verdict.

CONTRACT—ACTION—MORTGAGE.—Where A borrows money of B, and executes his note to B, and by deed conveys certain land to him, and takes from B a bond to re-convey the land on payment of the note, such transaction amounts *prima facie* to a mortgage, and if B, said bond not being recorded, sells and conveys said land to C, without notice of the nature of said transaction, for a sum much larger than the sum borrowed, A will be entitled to recover of B the difference between said sums.

VENDORS AND PURCHASERS—NOTICE.—Possession of real estate is only constructive notice to all the world of the rights of the party in possession; but it is held that the continued possession by the grantor of land after the making of his deed, will not be notice of a defeasance held by him which is not recorded.

APPEAL from the *Blackford* Circuit Court.

WORDEN, J.—On the 20th of *March*, 1858, *Benjamin Swoveland* borrowed of *Elliott Crassen* and *Equa Crassen* the sum of about 183 dollars, for which he gave them his promissory note for the sum of 200 dollars, payable in sixty days. At the same time *Swoveland* executed to the *Crassens* a conveyance in fee simple for eighty acres of land; the conveyance reciting that it was for the consideration of 200 dollars. At the same time the *Crassens* executed to *Swoveland* a bond in the penalty of 500 dollars, conditioned as follows:

"The condition of the above obligation is such that whereas the said obligee has this day purchased of *Elliott Crassen* and *Equa Crassen* the following real estate, (here the land is described as in the deed from *Swoveland* to the *Crassens*,) for the sum of 200 dollars, on the following terms, to-wit: one note of hand to be paid in sixty days from the above date. Now if, upon full payment of said purchase money, without any relief from valuation or appraisement laws, according to the tenor and effect of said promissory note, we shall make and deliver a good and sufficient deed of conveyance in fee simple for said real estate, then the above obligation to cease and be void, otherwise to be in full force," &c.

After the transaction above stated, the *Crassens* sold and conveyed the land to one *Mordecai Whitney*, for the sum of 1,000 dollars.

This action was brought by *Swoveland* to recover from the *Crassens* the amount thus received by them from *Whitney* for the land, less the amount due them from *Swoveland* for the borrowed money.

That is what the plaintiff recovered, and we think the complaint, although objection was made to it by demurrer, was sufficient to authorize such recovery. Copies of the deed and bond were set out. Objection is made that the amount due from *Swoveland* to the *Crassens*, for the borrowed money, was

not brought into Court. If the complaint were for a redemption of the land merely, the objection might require examination, but as that was so framed as to authorize a recovery of the money from the *Crassens,* it was not at all necessary for that purpose that *Swoveland* should bring into Court what he owed them.

Certain evidence was objected to on the trial, having for its object to show that the transaction was a mortgage, as that it was the intention of the plaintiff that it should operate only as a mortgage.

This testimony was harmless, if not legitimate. The transaction, including the borrowing of the money by *Swoveland,* the giving of his note, the execution of the deed by him, and the execution of the bond by the *Crassens* for a reconveyance upon the payment of the money, amounts, in law, *prima facie,* to but a mortgage. 1st Washburn on Real Prop. 494, sec. 18; *Watkins* v. *Gregory,* 6 Blackf. 119. Even illegal evidence that a thing was intended to be what it really is, could do no one any harm.

On the trial the Court permitted the plaintiff to insert, as an amendment to his complaint, an allegation to the effect that the deed and bond were designed as a security for the payment of the money and intended to operate as a mortgage. This amendment was objected to, and especially that the jury were not re-sworn. The amendment added nothing to what already appeared, as on the face of the papers, they amounted to only a mortgage, hence the permission so to amend, or the failure to re-swear the jury, could not be a fatal error.

The evidence is not before us, but the special answers of the jury to interrogatories, we here set out at large:

" 1st. Did *Swoveland* borrow any amount of money from the *Crassens?*

Ans. He did.

2d. If *Swoveland* borrowed money from the *Crassens*, how much did he so borrow?

Ans. He borrowed 183 dollars and some cents.

3d. Did *Swoveland* execute to the *Crassens* a note?

Ans. He did.

4th. If so, how much was the note for?

Ans. He executed a note; amount, 200 dollars.

5th. Did the *Crassens* hold *Swoveland's* note after the making and delivery of the deed by *Swoveland?*

Ans. They did.

6th. Did the *Crassens* hold the indebtedness for which the deed was made against *Swoveland* after the execution of said deed and bond?

Ans. They did.

7th. Do not the *Crassens* yet hold the note against *Swoveland* for which the deed in controversy was made?

Ans. They do.

8th. Was the deed in controversy intended as a security for the payment of the money received from the *Crassens*, or was it executed for the purpose of operating as an absolute and unconditional, or a conditional conveyance?

Ans. The deed was given as security for the payment of the money borrowed from the *Crassens*.

9th. Were the deed and bond named in the complaint executed at the same time?

Ans. The bond and deed were made at the same time.

10th. What was the difference between the amount of money received from the *Crassens* and the note given?

Ans. The amount was 17 dollars, nearly.

11th. Was there more than 6 per cent. interest included in the note given by *Swoveland* to the *Crassens?*

Ans. There was more than 6 per cent. included.

12th. For what amount did defendants sell the land to *Whitney?*

Ans. 1,000 dollars."

The defendants ask that the following interrogatories be answered by the jury:

"1st. If any amount of money was included in the note of 200 dollars, above the sum actually paid to *Swoveland* by the *Crassens*, was it for interest, or was it for the trouble and expense of the *Crassens* in procuring the money for *Swoveland?*

Ans. The amount was for interest and expenses.

2d. Were the deed and bond executed to operate as a mortgage, or was the deed to operate as a sale and conveyance of the land in case the note was not paid at the end of sixty days?

Ans. To operate as a mortgage.

3d. Did *Swoveland* tender to defendants, or either of them, the amount of the note, or any other amount, on the day the note became due? (Ans. No.) Or at any other day, if so, when?

Ans. There was a tender made before suit was commenced.

4th. Has any sum of money been paid into Court since the commencement of the action, for the purpose of paying the note?

Ans. There was no money paid into Court since the action commenced.

5th. Have the *Crassens*, after the note for 200 dollars became due, and before the commencement of this action, for a valuable consideration, conveyed the land in controversy to *Mordecai Whitney*, and, if so, had *Whitney*, either before or at the time of the conveyance, any notice that *Swoveland* had any claim upon the land, and, if so, what was the notice?

Ans. The *Crassens* sold the land after the note became due, and *Whitney* had no notice of *Swoveland* having any claim on the land at the time of sale.

6th. What was the cash value of the land at the time of the conveyance to the *Crassens?*

Ans. 650 dollars.

7th. In whom was the title of the land at the commencement of this action, and in whom is it still?

Ans. The title was in *Swoveland,* and is still.

8th. Who has paid the taxes since the conveyance to the *Crassens,* and what amount has been paid?

Ans. The *Crassens* paid the taxes.

9th. Who has possession of the land, and rents and profits?

Ans. *Swoveland.*

10th. Have the *Crassens* been guilty of any fraud in procuring the deed, bond and note, and were the papers executed by the parties in any thing different from what they were intended at the time?

Ans. No.

11th. Who was in possession of the land at the time *Whitney* bought it.

Ans. *Swoveland.*

12th. What amount of money was tendered the defendants by the plaintiff, and when made?

Ans. 200 dollars; before suit was commenced."

There was no general verdict, and the question arises, whether the answers of the jury to the foregoing interrogatories are sufficient to sustain the judgment of the Court? The mere fact that there was no general verdict, we think, unimportant, inasmuch as the parties seem, by the course which they pursued, to have waived it. The parties did not ask to have their special questions answered in the event only of there being a general verdict, but unconditionally; and the special questions are so framed as to cover what seems to be the substance of the whole case. We think, from the course pursued, the parties were content to waive a general verdict, and rest their case upon the answers which the jury might

Crassen *v.* Swoveland.

give to the questions thus propounded to them; hence they can not complain that there was no general verdict.

We think the proposition is a very clear one, the transaction between *Swoveland* and the *Crassens* having the effect only of a mortgage, that, if the *Crassens* sold and conveyed the land to *Whitney* for 1,000 dollars, the purchase money being paid, and *Whitney* having no notice of *Swoveland's* claim, whereby *Whitney* would be enabled to hold the land, the *Crassens* are liable to *Swoveland* for the amount thus received by them, less the amount he owed them. This must be so on the plainest principles of equity. The *Crassens*, in respect to the matter, may be regarded as the trustees of *Swoveland*, and liable to account to him for whatever they have received, without making any profit to themselves. 1 Story's Eq., sec. 465. Where a sale is made of land by a mortgagee under a power, he holds the proceeds, after satisfying the mortgage debt, as a trustee for him who is entitled to the equity of redemption. 1st Washburn on Real Estate, 500. We are not prepared to say that *Swoveland* might not ratify the sale and hold the *Crassens* liable for the amount received by them, even if *Whitney* have notice, but this point is not necessary to be decided.

Taking the special answers of the jury as an entirety, they show, as we think, such a state of facts as would enable *Whitney* to hold the land as against *Swoveland*. It is found that the *Crassens* sold the land to *Whitney* for 1,000 dollars. The inference is that the money was paid down, as there is no finding, nor was any question put, as to there being a credit for all or any part of it. It is also found that *Whitney* had no notice of *Swoveland's* claim. The fair interpretation of this finding is that *Whitney* had no actual notice, nor such constructive notice as would arise from a recording, within the proper time, of the bond, which operates as a defeasance. If *Whitney* had notice, either actual or constructive, he would have had notice, and this would contradict the finding.

VOL. XXII.—28

Crassen v. Swoveland.

But it is claimed that as it was found that *Swoveland* was in possession of the land at the time *Whitney* purchased it, this was constructive notice. As a general proposition, the doctrine that possession of real estate is constructive notice to all the world, of the rights of the party in possession, is conceded. But the doctrine has no application to the case before us. We take it for granted that the bond which operated as a defeasance, was not recorded so as to constitute a constructive notice to *Whitney*, for two reasons: 1st. There was no finding that it was so recorded; and, 2d. The jury have negatived any notice, which includes constructive as well as actual notice. Our statute on the subject of registry, provides that: "When a deed purports to contain an absolute conveyance of any estate in lands, but is made, or intended to be made defeasible, by force of a deed of defeasance, bond, or other instrument for that purpose, the original conveyance shall not thereby be defeated or affected, as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded, according to law, within ninety days after the date of said deed." 1 G. & H. p. 261, sec. 17. This statute, it will be seen, requires actual notice, to defeat a purchaser, where the defeasance has not been duly recorded. Possession has never been held any thing more than constructive notice. Such constructive notice does not come within the statute. This is in accordance with the authorities. Says an elementary writer: "Nor will the continued possession by the grantor of land, after the making of his deed, be notice of a defeasance held by him, which is not recorded." 1 Wash. on Real Prop. p. 495, sec. 22. The case of *Hennesy* v. *Andrews*, 6 Cush. 170, is directly in point, under a statute similar to our own.

The fact, then, that *Swoveland* was in possession of the land

at the time *Whitney* purchased it does not seem to effect the rights of the latter in the least.

But the jury found that at the commencement of the suit the title to the land was in *Swoveland*, and is still in him. There is some apparent inconsistency between this and the other findings. We have already seen that there were find-ings abundantly sufficient to show that the title was in *Whit-ney*. We are inclined to regard the finding, as to the title being in *Swoveland*, as a conclusion of law drawn by the jury from the fact that the deed and bond amounted to a mortgage only, and not an absolute conveyance. If the jury erred in that conclusion, that is no sufficient reason why the findings, taken together, should not authorize a judgment for the plaintiff.

The appellants insist that the Court erred in not allowing them credit for the amount of taxes paid by them. There was a very good reason for not allowing them, which was that no data were furnished to enable the Court to make the allowance. The jury did not find how much the appellants had paid for taxes. The appellants asked, to be sure, that the jury find what amount of taxes had been paid. If there was no evidence before the jury to show the amount, the ap-pellants had no right to expect the question to be answered. If there was evidence they should have insisted upon an an-swer to the question; as they did not, they waived it.

The case seems to have been fairly tried upon its merits; the judgment is right in principle, and we think there is no error in the record which requires a reversal.

The appellee has assigned a cross error upon the refusal of Court to allow him interest upon his claim against the *Cras-sens*. Without stopping to inquire whether it was a case in which interest should have been allowed, we may dispose of this question on another ground. There was nothing found by the jury, as in the case of the taxes, which would enable the Court to determine the amount of the interest. When

the *Crassens* received the money, does not appear from any finding of the jury, except that they sold the land after the note became due and before commencement of this suit; hence the amount of interest which they should pay could only rest upon conjecture. The appellee seems to have been aware of this difficulty, for in his motion on this subject, he asked the Court to allow him interest on the money "from the time of the sale as shown by the evidence." The cause having been tried by a jury, we know of no practice that would authorize the Court to look partly to the verdict, and partly to the evidence for a basis on which to render judgment. No error was committed in overruling the motion.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages, and costs.

*Walter March*, for the appellants
*J. Brownlee*, for the appellee.