## HOPKINS ET UX. *v.* STANLEY ET AL.

PRACTICE.—*Interrogatories to Jury.*—The statute authorizes the propounding of interrogatories to be answered by the jury, only where there is to be a general verdict.

SAME.—*Special Verdict.*—Either party may demand a special verdict, and when demanded, the jury are to find the facts only, leaving judgment thereon to the court. In such case, it is the right of each party to draw up in proper form, to be submitted to the jury, a statement of such facts as he conceives the evidence establishes. The jury may adopt either the one or the other, if in their judgment the evidence justifies it, or they may adopt either the one or the other in part and reject part, as the evidence may require, or they may reject both and make a statement of facts which they find to have been proved.

SAME.—Where a special verdict is demanded, and the parties do not object to the propounding of interrogatories covering the material facts in the case, but assume that such is the correct practice, by preparing and submitting inter-

rogatories, they may be deemed to have waived the finding of a special verdict in the usual form.

SAME.—*Interrogatories to Jury.*—Where interrogatories are propounded to a jury, which involve a finding of facts material to a correct decision of the cause, the answers must be positive and certain. Answers expressing only the inclination of the minds of the jury, as to say, "we think not," etc., are insufficient and too uncertain to base a judgment upon.

From the Putnam Circuit Court.

*S. Claypool* and *L. P. Chapin*, for appellants.

*D. E. Williamson* and *A. Daggy*, for appellees.

WORDEN, J.—This was an action by Melissa Stanley and David, her husband, against Mary A. Hopkins and James Hopkins, her husband, to recover possession of certain real estate described.

The defendants filed a cross complaint against the plaintiffs and John S. Jennings, alleging, in substance, that Mrs. Hopkins had purchased the property in controversy from Jennings, and had taken a bond from him for the conveyance of the property when the purchase-money should be paid; that Jennings had put her in possession of the property, and that she had made large and valuable improvements thereon; and that afterward, and while she was thus in possession, Jennings had conveyed the property to the plaintiff Mrs. Stanley, the latter having full notice of the rights of Mrs. Hopkins therein. That most of the purchase-money has been paid by Mrs. Hopkins to Jennings, and there is an offer to pay the residue. Prayer for specific performance and other relief. To the cross complaint a general denial was filed, with an agreement that under it all parties might give in evidence any and all matters in the same manner as if specially set up in answers or replies.

The cause was submitted to a jury for trial, and at the proper time Mrs. Hopkins demanded a special verdict. With a view to such special verdict she prepared certain questions or interrogatories and asked the court to propound them to the jury to be by that body answered. The court did not propound to the jury all the questions embraced in Mrs.

Hopkins' request, but did propound forty questions, which, together with the answers of the jury thereto, we append.

1st. Was, or was not, John S. Jennings the owner in fee simple of the land now in issue, on the 5th day of April, 1859, or when the bond hereafter referred to was executed? Ans. Yes.

2d. Did, or did not, said Jennings execute a title bond to said Mary A. Hopkins for the conveyance of said land? Ans. Yes.

3d. When was that bond, if any, executed? Ans. 1859.

4th. What did said bond, if anything, obligate said Jennings to do, and when? Ans. Make her a deed six years after date, if purchase-money had all been paid.

5th. What was the price required by said bond, if any, to be paid for said land? Ans. About fifteen hundred dollars.

6th. When was said price to be paid? Ans. Six years after date of bond.

7th. Has, or has not, said purchase-money been paid? Ans. Yes; paid in settlement.

8th. How much, if any, has been paid? Ans. Something over six thousand dollars.

9th. At what time or times was it paid, if any was paid? Ans. About the year 1865.

10th. How much, if any, of said money remains unpaid? Ans. None.

11th. Did or did not said Mary A. Hopkins take possession of said land under said bond with the consent of said Jennings? Ans. Yes.

12th. Did or did not said M. A. Hopkins make improvements on said land? Ans. Yes.

13th. What improvements, if any, did she make? Ans. House, and all the improvements on said land.

14th. What is the value of said improvements, if any? Ans. About six thousand dollars.

15th. Did or did not said bond afterward, or about October, 1864, go into the hands of said Jennings? Ans. Yes.

16th. If so, then for what purpose? Ans. As collateral security.

17th. Was or was it not done with the knowledge and consent of said M. A. Hopkins? Ans. Yes.

18th. Did or did not said Jennings afterward convey said land to said Melissa Stanley? Ans. Yes.

19th. If so, about what date was the conveyance made? Ans. About August, 1869.

20th. Was or was not said M. A. Hopkins then in possession of same? Ans. Yes.

21st. How long, if at all, had she been in possession? Ans. Since 1859.

22d. Had or had not said Mrs. Stanley notice of any claim of said Mrs. Hopkins to said property at the time of the conveyance to Mrs. Stanley. Ans. Yes.

23d. If so, what was that claim? Ans. About ninety dollars paid by Orvil Earl for taxes, and twenty dollars for moving.

24th. How much, if any, did Mrs. Hopkins herself pay upon said land and improvements? Ans. One gold watch valued at seventy-five dollars.

25th. How much, if anything, did her son Orvil Earl pay for her on same? Ans. About fifteen hundred dollars.

26th. What in value of improvements did he make on said land for her? Ans. About one hundred and fifty dollars.

27th. Did or did not Mrs. Hopkins invest any of her own money or property in making said improvements? Ans. Yes.

28th. If so, how much? Ans. About seventy-five dollars.

29th. If said bond came into the hands of said Jennings as a collateral security, did it ever again pass from his hands into the possession of Mrs. Hopkins? Ans. We think not.

30th. Was or was not said bond ever surrendered to said Jennings and cancelled? Ans. It was.

31st. If so, when was it done? Ans. August 1st, 1865, at the time the settlement was made.

32d. Was or was it not done, if at all, with the knowledge and consent of Mrs. Hopkins? Ans. We think it was.

33d. If said bond was ever surrendered to said Jennings and cancelled by Mrs. Hopkins, did she do it in writing, by joining with her husband, or by her separate endorsement? Ans. By her separate endorsement.

34th. If said bond was ever surrendered to said Jennings by Mrs. Hopkins, was or was not the ownership of the land and property surrendered to him unconditionally, or was it done for the purpose of allowing him to sell the property to satisfy debts due him and then account for the excess to her and her husband? Ans. To sell and account to them all over the agreed price.

35th. Did or did not Mrs. Hopkins agree with said Jennings that if he permitted her to remain in possession of said property, she would surrender the possession peaceably at the end of the term agreed upon? Ans. Yes.

36th. Did or did not Mrs. Hopkins state to plaintiffs, just before their purchase of said property, that the title was all right and clear in Jennings? Ans. We think she did.

37th. Were or were not plaintiffs induced by said representations, if any, to purchase said property? Ans. We think they were.

38th. Did or did not Mrs. Hopkins further state that she would surrender possession of said property by the 1st of November, 1869? Ans. We think she did.

39th. Did or did not the plaintiffs, immediately after said representations of Mrs. Hopkins to them, purchase said property from said Jennings and take a deed of conveyance therefor to Mrs. Stanley? Ans. They did.

40th. What is the value of the rent of said property from the time Mrs. Stanley purchased it to this date? Ans. We think about two hundred dollars.

At the time these interrogatories were propounded to the jury, Mrs. Hopkins objected to them, on the ground that they were insufficient to cover all the issues, etc.; and upon the return of the verdict she objected to its being received,

and moved that the jury be sent out again for further deliberation and to make more certain and definite answer; she also, at the proper time, moved for a *venire de novo.* These objections and motions, however, were all overruled, and exception taken. Judgment was rendered in favor of the plaintiffs below for the recovery of the property.

The sufficiency of the verdict is questioned; and that question is fully presented by the record.

We do not approve of the method adopted in this case of preparing a special verdict, that is, by propounding to the jury questions or interrogatories to be by them answered. The statute only authorizes interrogatories to be put, to be answered by the jury where there is to be a general verdict. 2 G. & H. 205, sec. 336.

There are cases, such as that of *Crassen* v. *Swoveland,* 22 Ind. 427, where a special verdict was not demanded, but where interrogatories covering the whole case were put and answered, on which judgment was rendered, the parties being deemed to have waived the finding of a general verdict. Interrogatories, as before observed, are to be put only on the theory that there is to be a general verdict. But either party may demand a special verdict. When such verdict is demanded, "the jury are to find the facts only, leaving judgment thereon to the court." 2 G. & H. 205, sec. 335. To enable the jury in such case to discharge their duty understandingly, it is the right of each party to draw up, in proper form, a statement of such facts as he conceives the evidence establishes, to be submitted to the jury. If this is done on each side, the jury will have before them in proper form, what is claimed to be proved on each side. The jury may adopt either the one or the other, if in their judgment the evidence justifies it, or they may adopt either the one or the other in part and reject it in part, as the evidence may require; or they may, doubtless, reject both, and proceed in their own way to make out a statement of the facts they find to be proved. *The Pittsburgh, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294. But Mrs. Hopkins did not object to the

mode adopted. Indeed, she assumed that it was the proper practice, inasmuch as she prepared interrogatories to be propounded to the jury for their response.

But the interrogatories put were not all sufficiently answered to make them the basis of a valid judgment. Passing over some uncertainty involved in several of the other questions and answers, it will be noticed that the twenty-ninth was answered, "we think not;" the thirty-second "we think it was;" the thirty-sixth, "we think she did;" the thirty-seventh, "we think they were;" the thirty-eighth, "we think she did."

The questions thus answered are important ones, especially those relating to the supposed estoppel; and we have, after full consideration, concluded that the answers are insufficient. The other questions are answered generally with positiveness and certainty. These were answered only as the jury thought. It would seem as if, when they came to consider the evidence bearing upon these questions, the jury could not get the full consent of their judgments to answer them positively, but were willing to express the inclination of their minds as above shown. We are not satisfied that the jury meant to return as facts matters about which they expressed only their thoughts. In the case of *Diehl* v. *Evans*, 1 S. & R. 367, the jury had returned that they were "of opinion" that a certain matter had transpired. TILGHMAN, C. J., said in relation to it: "An opinion is not a legal verdict. The finding must be positive." On the subject of verdicts we make the following quotations: " It has long been well settled, that the courts will give validity to verdicts when they perceive the substance of the issue to be contained in the verdict, however rude or informal the finding of the jury may have been expressed. In the language of Ch. J. HOBART, 'the court will work the verdict into form, and make it serve.' For verdicts are to have a reasonable intendment, and to receive a reasonable construction, and are not to be avoided unless from necessity, originating in doubt of their import, or immateriality of the issue found, or their

manifest tendency to work injustice." Graham & Waterman New Trials, 159. The following paragraph may be found in vol. 3, p. 1378, of the same work:

"The verdict must be certain, positive, and free from all ambiguity. It must convey on its face a definite and precise meaning, and must show just what the jury intended. An obscurity which renders it at all doubtful will be fatal to it. It would be extremely hazardous for the court, were it permitted to do so, to attempt to interpret it. It would, in effect, be making a new verdict, without, by any means, a certainty of rendering as the jury meant to find. Thus would the court usurp the office of, and supersede the jury; and the second result would be even less reliable, and therefore less satisfactory than the first. Loose, careless, and imperfect verdicts would multiply, until trial by jury would become an empty and useless form, the court supplying, by guess, what appeared to it to be deficiencies."

The answer to the thirty-second interrogatory went to the question whether the bond was surrendered and cancelled with the knowledge and consent of Mrs. Hopkins.

The succeeding interrogatories, that were answered as the jury thought, had for their object the development of such facts as would estop Mrs. Hopkins to set up her claim to the property as against Mrs. Stanley. We do not pass upon the legal merits of the case, the verdict being insufficient to enable us to do so. We may observe, however, that we see no legal reason why a married woman should not be estopped by the same conduct that would estop her were she sole. In *Wright* v. *Arnold*, 14 B. Mon. 638, it was said: "The doctrine is well settled, that neither infancy nor coverture will constitute any excuse for conduct which in other persons would, as it regards purchasers for a valuable consideration, be deemed unjust and fraudulent." See, also, Story Eq., sec. 1536.

We are of opinion that the court erred in not requiring more definite answers to be made, and in rendering judgment for the plaintiff on the verdict as returned.

The judgment below is reversed, with costs, and the cause remanded for a new trial.