## INDIANAPOLIS TRACTION & TERMINAL COMPANY
## v. FORMES.

[No. 5,861.  Filed April 3, 1907.  Rehearing denied June 5, 1907.]

1. PLEADING.—*Complaint.—Master and Servant.—In Line of Duty. —Street Railroads.—Negligence.*—A complaint, by a passenger, alleging that defendant street railroad company "by and through its servants, who were in charge of said car, * * * negligently ran said car" into a railroad train, causing plaintiff's injuries, ·shows that such servants were in charge of the car. p. 205.

2. SAME.—*Amendments After Trial.*—The trial courts may permit the amendment of an answer after trial, so as to have such answer conform to the proof; and the correction of the order-book entry of the filing of an amended answer, by showing such amendment was merely by interlineation of the original answer, is harmless. p. 205.

Indianapolis Traction, etc., Co. *v.* Formes—40 Ind. App. 202.

3. PLEADING.—*Amendments.—Change of Issues.*—Immaterial amendments made to an answer, after trial, so as to make it conform to the proof, do not have the effect of withdrawing from the record the replies; but the same issues remain, and the jury need not be resworn. p. 206.

4. MUNICIPAL CORPORATIONS.—*Ordinances.—Regulating Railroad Crossings.—Street Railroads.*—A city ordinance requiring motormen of street-cars to stop until their conductors, after crossing the railroad tracks, signal them to cross, is reasonable and valid. p. 207.

5. EVIDENCE.—*Records of Signal Service.—Harmless Error.*—The admission of the records of the signal service to prove that the day on which an accident happened was cloudy and misting, is harmless, where the uncontradicted evidence showed that it was. p. 207.

6. SAME.—*Opinions.—Hypothetical Questions.*—Parties have the right, in propounding a hypothetical question to an expert, to assume any fact or facts which the evidence tends to prove, the existence of such assumed fact or facts and the weight of the opinion of the expert thereon being questions for the jury. p. 207.

7. APPEAL.—*Theory of Case.—Resulting Errors.*—Where a certain theory of the effect of an amendment to an answer is not sustained on appeal, alleged errors resulting from such theory will not be further noticed. p. 208.

8. TRIAL.—*Instructions.—How Considered.—Compromise.—Mental Condition.*—Instructions must be considered as a whole and not separately; and an instruction correctly stating the law in the abstract, as to plaintiff's mental condition at the time of executing a release, is not harmful, where other instructions correctly state the law concretely thereon. p. 209.

9. SAME.—*Instructions.—Compromise.—Tender of Money Received.*—An instruction, in a personal injury case, as to the right of plaintiff to have an alleged settlement set aside on account of fraud, which instruction omits the requirement of a tender back of the money received, is harmless, where the evidence shows, without conflict, that such tender was made. p. 210.

10. COMPROMISE AND SETTLEMENT.—*Street Railroads.—Negligence.—Fraud.*—A settlement, secured by a street railroad company with a woman injured by its negligence, about ten hours after the accident and when she was delirious and hysterical from the effects of opiates, and the money given was promptly returned, is invalid. p. 211.

11. TRIAL. — *Instructions. — Repetitions. — Fraud.* — Appellant, at whose request ten instructions were given on the question of fraud, has no cause to complain because the court gave six at the request of appellee. p. 212.

12. TRIAL.—*Instructions.—Issues.—Burden of Proof.*—An instruction outlining the issues in a personal injury case, wherein an alleged fraudulent settlement was involved, showing on which party the burden of proof lay, is proper. p. 213.

13. SAME.—*Interrogatories to Jury.—Erroneous View of Law.——When Harmless.*—Where the defendant was liable under the answers to the interrogatories to the jury, regardless of the question whether an interlineation of a release, after its execution, vitiated same, the trial court's erroneous view of such question is not reversible error. p. 213.

From Morgan Circuit Court; *Joseph W. Williams,* Judge.

Action by Elizabeth Formes against the Indianapolis Traction & Terminal Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellant.

*George Young, George W. Grubbs* and *John M. Bailey,* for appellee.

RABB, J.—The appellee sued the appellant, together with the Indianapolis Street Railway Company, the Cincinnati, Hamilton & Western Railway Company, and the Cincinnati, Hamilton & Dayton Railway Company, to recover damages alleged to have been sustained by her through the negligent act of the defendants. The cause was dismissed as to all the defendants except the appellant. The appellant's demurrer to the second paragraph of the amended complaint was overruled and an exception reserved. An' answer in two paragraphs—the first a general denial, the second setting up a written release executed by the appellee · before the commencement of the action—was filed by appellant. The appellee replied to this answer, (1) denying under oath the execution of the writing; (2) alleging fraud in procuring the release. The entire record in the case is not before the court, but it appears that there were two· jury trials in the case, the first trial, 'for some reason not made apparent, either resulting in no verdict, or the verdict was set aside. On the second trial a general verdict was returned in favor of appellee, assessing her damages at $8,000, together with

answers to interrogatories submitted to the jury by the court. Appellant's motion for a new trial, assigning seventy-seven reasons therefor, was overruled, and judgment rendered on the verdict in favor of appellee.

The first assigned error urged upon our consideration by appellant is the overruling by the court below of the demurrer to the second paragraph of the amended complaint. 1. The objection taken to this paragraph is that it does not sufficiently show that the motorman and conductor were acting in the line of their duty and employment at the time of the alleged injury. There is no merit in this contention. The paragraph of complaint in question avers, among other things, that the "defendant, by and through its servants, who were in charge of said car upon which the plaintiff was a passenger, carelessly and negligently ran said car, or caused the same to be run, upon said railroad track at said crossing, and carelessly and negligently collided with a moving freight-car on the west track, causing the injury to the plaintiff, hereinafter more fully set forth." This language plainly means that appellant's servants in charge of their passenger-car negligently and carelessly ran it in collision with the freight-car. The averment that the servants had charge of the car was sufficient to impose upon them the duty of at least keeping it out of harm's way. *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 545.

It appears that after the close of the evidence upon the first trial appellant asked and obtained leave of court to amend the second paragraph of its answer to correspond with the proof by striking out certain words 2. in the answer and inserting certain other words, all of which was set forth in their written motion. The record recites that "the court grants said petition and permits said amendment, and now said amendments are made and said second paragraphs are each filed and are as follows," setting out the original paragraphs of answer as amended.

This entry was made in May, 1904. After the judgment was rendered in this cause the appellee filed a verified motion to correct this order-book entry, by making it show that the amendment to the answers was by interlineation and not by filing an amended answer. This motion was sustained and the correction ordered, and to this action of the court an exception was taken by appellant, and is earnestly insisted to be reversible error.

If there was error in this action of the court, a question we do not decide, it was entirely harmless. The theory of appellant is that by the act of refiling the answers 3. as amended under the leave of court granted, so that the same would conform to the proof given on the trial, the issues in the cause were thereby changed, and appellee's reply withdrawn from the record. This is an erroneous assumption. Amendments of this character do not change the issues as they are formed and submitted for trial. A different rule prevails as to such amendments made after the issues are formed and submitted for trial to conform the pleadings to the proof given upon the trial than obtain where amendments are made to pleadings that are designed to form the issue to submit for trial. In this case, when this amendment was made, the issues had all been formed, and those issues had been submitted to a sworn jury to try. It was not a material amendment. It did not change the issues and require that the jury be re-sworn. If the appellant is right in its contention, then the making of the amendment would have had the effect of withdrawing the case from the jury, and requiring its re-submission and the jury to be re-sworn. We hold that the refiling of the amended answers was entirely unnecessary, and that it had no effect to change the issues as they were formed and submitted to the jury. *Crassen* v. *Swoveland* (1864), 22 Ind. 427; *Record* v. *Ketcham* (1881), 76 Ind. 482.

One reason, among others, for a new trial is that the

court erred in permitting the appellee to introduce in evidence over the objection of the appellant, the city

4. ordinance requiring the conductor of a street-car to go across the tracks of a steam railroad in advance of his car, and prohibiting the motorman from moving the car across the track until he is signalled so to do by the conductor from the opposite side of the track. The objection urged against this ordinance is that it is unreasonable, oppressive, unfair and arbitrary. Cities have power to enact ordinances for the security and protection of their citizens. The evident purpose of this ordinance was to add to the security and safety of the citizens of Indianapolis traveling in street-cars upon the streets of the city. We think that the provisions of the ordinance were well calculated to give much better security to those using the street-cars, and that it was not unreasonable, unfair, arbitrary, nor oppressive. *Pittsburgh, etc., R. Co.* v. *Browning* (1904), 34 Ind. App. 90.

It is urged that the court erred in permitting the record of the signal-service to be introduced in evidence. Perhaps it did, but, if so, it was certainly a harmless error.

5. The uncontradicted testimony of all the witnesses, both for appellant and appellee, who testified on the point, shows that at the particular time of the accident it was cloudy and misting rain, but that there was an electric light at the crossing, and that the street-car had an electric headlight that illuminated the surroundings, and this item of evidence could not possibly have influenced the verdict of the jury.

Objection is also made to a hypothetical question propounded to Dr. Sandy upon his examination in rebuttal. The only objection to this question that we can see

6. is that it is too long, embodying quite a number of unnecessary facts; but we do not think the question is subject to the criticism urged against it by appellant. It

was not necessary that the question should set forth and embody all the facts in the case relating to the matter. Parties have the right to propound hypothetical questions to professional witnesses embodying the proponent's theory of the facts in the case, within the limits of what the evidence tends to prove. If the evidence fails to sustain the facts embodied in the question, upon which the expert bases his opinion, then the answer will prove nothing, and the jury should be so instructed. If other facts than those set forth in the question, and that would affect the opinion of the witness, appear in evidence, it is the province of the opposing party to make this apparent upon cross-examination of the expert, and in this way his opinion would be properly expressed to the jury and go for what it was worth. Thus, it could be shown in cross-examination, that other causes than the injury complained of might have produced upon the patient the effect described in the hypothetical question. But the proponent of the question undoubtedly had the right to assume that the evidence established the fact that there were no other causes to produce the given effect; and in this case the appellee had introduced evidence from which the jury might infer that her physical condition, as described in the hypothetical question, was produced alone by the injury she had received in the accident. *Guetig* v. *State* (1879), 66 Ind. 94; *Burns* v. *Barenfield* (1882), 84 Ind. 43; *Goodwin* v. *State* (1884), 96 Ind. 550; *Davidson* v. *State* (1893), 135 Ind. 254; *Thomas* v. *Dabblemont* (1903), 31 Ind. App. 146; *Standard Oil Co.* v. *Bowker* (1895), 141 Ind. 12.

Many of the alleged errors of the court below complained of by appellant are disposed of by the view we take of the effect of the amendment to the appellant's answer made to correspond with the proof upon the first trial of the cause, and it is unnecessary further to note them.

Appellant complains of the eighth, ninth, tenth, eleventh,

MAY TERM, 1907. 209

Indianapolis Traction, etc., Co. *v.* Formes—40 Ind. App. 202.

fourteenth, and fifteenth instructions given by the court to the jury at appellee's request, and its very able and learned counsel assail these instructions in most vigorous and graphic argument. It is insisted that they are vague, uncertain, shifting, and illusionary; that they form no basis upon which the jury could determine the case; that they do not properly state the law; that they relate to issues not before the jury; that they leave out of the case elements that are necessary for the jury to consider; that some of them are mandatory, and omit the consideration by the jury of facts necessary to be shown in order to justify a mandatory instruction. The most of these instructions just complained of are general statements of abstract propositions of law, not undertaking to give to the jury the law applicable to the particular facts shown in the evidence, and they correctly state the law as it is laid down in the books.

Instruction eight, which is subject to the severest criticism from counsel, and which is literally torn to shreds and patches, is copied *verbatim et literatim* from the decision of the Supreme Court in the case of *Yount* v. *Yount* (1896), 144 Ind. 133, and it correctly states the abstract law upon the subject. If it were the only instruction given to the jury it would be subject to criticism only because it was too general in its terms, and did not lay down the rule with sufficient particularity to. guide the jury in their decision of the case before them upon the pleadings and evidence. But instructions are not to be taken up and singly analyzed, and accepted or rejected without reference to others. The entire instructions must be considered together. It is not to be supposed that the court undertakes to state all the law governing a case in a single instruction. All the instructions given by the court to the jury upon any particular subject are to be considered and construed together. No reversible error is shown when we consider and construe these instructions complained of,

210     APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Formes—40 Ind. App. 202.

along with instructions, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty and twenty-one, given by the court to the jury at appellant's request, wherein the jury is repeatedly told that, if the appellee had sufficient mental capacity to know and understand the terms of the contract she was signing, then the contract would be valid and binding, whatever it might think of the inadequacy of the consideration or the circumstances under which it was signed, the real and vital question in the case, so far as that branch of it was concerned, being, did the appellee understand the terms of the contract she was signing? This was repeated over and over again in these instructions, so that the jury could not have misunderstood the issue, nor have been misled by any of these instructions complained of, and the answers to the interrogatories returned with the general verdict show clearly that the jury fully comprehended the exact issue it was called upon to determine from the evidence.

It is complained that the instructions given, as above referred to, left out of consideration the vital question of the tender back by the appellee to the appellant of the consideration which she had received for executing the release. There was no dispute in the evidence about the fact that such tender had been made. The accident in which appellee was injured occurred on March 2, 1903, and this suit was brought on April 2, following. The evidence shows, without contradiction, that the $20 paid by the company to the appellee, as a consideration for the release, was tendered back to the company the next day or two after the transaction took place, and the tender kept good by bringing the money into court when the suit was brought, for the use and benefit of the appellant. This being the case, the omission of the court to state in instructions ten and eleven that it was necessary, in order to justify a verdict in behalf of the appellee, that this fact should be proved, would be a harmless error.

Complaint is also made of instructions twelve and thirteen. By these instructions the jury was told that if, after the contract of release was executed by the appellee, it should find that the appellant, without appellee's knowledge or consent, altered the same by writing therein the words, "and said company agrees to pay the doctor's bills," that such alteration vitiated the contract, and it would not be binding upon the appellee. Appellant very earnestly and forcefully contends that such an alteration made in an executed instrument of the character here involved would not affect the validity of the release; that a different rule applies to alterations made in written instruments evidencing executed contracts than that which applies to alterations made in written instruments evidencing executory contracts, and we are not prepared to say that the contention of appellant upon this proposition is not the law. We do not feel called upon to decide that question here.

In this case the jury returned with its general verdict answers to certain interrogatories, among others the following: "Was plaintiff at her home when she signed 10. said release? A. Yes, the original release. How many times, if at all, did plaintiff read said release before she signed it? A. Did not read it. If the plaintiff signed the written release pleaded by the defendant in its answer, where did she so sign it? A. At home. Who took said release to her home? A. George Harvey. How long was that after the plaintiff was injured? A. About ten hours. Was she lying on her couch at the time? A. Yes. Was she under the influence of opiates? A. Yes. Was she suffering pain from her injury? A. Yes. Was she delirious? A. Yes. Was she at the time hysterical? A. Yes. Was her will power and judgment at the time impaired? A. Yes. If she read the paper over did she understand and comprehend its meaning? A. No. If she signed the paper presented by Harvey, did she know that she was releasing her cause of action against the company?

A. No. Was not the plaintiff's mind weakened by the use of medicine, by pain and suffering, when she signed the release. A. Yes. Did George Harvey, agent of the defendant company, in first stating his business the day the release was signed, use this language: 'Mr. Jones sent me out with $20, thinking you might need it to help you through. The company always tries to help its employes,' or words to that effect? A. Yes.'' The evidence introduced in the case upon the subject of the signing of this release was conflicting, but there was evidence that justified the finding made by the jury in its answers to all of these interrogatories. With these facts found by the jury, it could make no difference when the clause providing that the appellant company should pay the doctor bills was written in the instrument, with reference to its execution, or what its legal effect. The existence of these facts, with the undisputed facts shown in the evidence, that the appellee promptly disavowed the release and offered to return the consideration, and kept that offer good by bringing the money into court, precludes this court from reversing the case, whether this instruction was right or wrong. If these facts existed the case was correctly decided regardless of the correctness of the instruction. *Sponhaur* v. *Malloy* (1898), 21 Ind. App. 287; *Pittsburgh, etc., R. Co.* v. *Higgs* (1905), 165 Ind. 694; *Morgan* v. *Jackson* (1904), 32 Ind. App. 169; *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312; *Muncie Pulp Co.* v. *Koontz* (1904), 33 Ind. App. 532; *Terre Haute, etc., R. Co.* v. *Salmon* (1905), 34 Ind. App. 564; *Baum* v. *Palmer* (1905), 165 Ind. 513.

It is claimed that the court gave undue prominence to the question of fraud; that instruction after instruction involving the same points was hurled at the jury, some of them word for word alike. No unusual number of instructions were given by the court to the jury in this case upon that subject. Instructions eight, nine, ten, eleven, fourteen and fifteen, asked by the appellee, were

on that subject. Instructions eight, nine, fourteen and fifteen were simply general statements of the abstract law, not undertaking to call the jury's attention to particular facts involved in the case. Instructions ten and eleven are the only ones that directed the attention of the jury to the facts claimed by appellee as controlling and bearing on the case; whereas the court gave, at the request of the appellant, ten instructions upon the same subject. We think the appellant has no ground to complain on this score. The court seems to have acted with perfect impartiality in that respect, and to have given to the jury all the instructions asked by either party, except a peremptory instruction asked by the appellant, which was refused. Nor were the instructions conflicting. Complaint is made of instruction three, given by the court at appellee's request. We think this instruction 12. was not erroneous. It clearly stated to the jury the issues, and where the burden lay upon the complaint, the answer, and the reply. That was the sole purpose of the instruction, and the jury could not have misunderstood it. We think the evidence sufficient to sustain the verdict of the jury.

The fact that the jury answered in the negative the interrogatory as to whether the appellee had signed the written release pleaded by the appellant, does not affect the 13. case. It is perfectly manifest from the answers to all of the interrogatories that the jury find that the clause providing that the company should pay the doctor's bills was inserted in the original agreement after the appellee signed it. They do find that she signed the original agreement, and the misapprehension of the court, if it was a misapprehension, that the interlineation of the words with reference to the doctor's bills in the written release vitiated the instrument, would not affect the rights of the appellant, nor justify this court in reversing the case.

Judgment affirmed.