McKENNA ET AL. *v.* TURPIN.

[No. 19,006. Filed June 25, 1958.]

*Charles W. Cook, Jr.* and *Albert W. Ewbank,* both of Indianapolis, for appellants.

*James Puckett, Sr.* and *Hartman, Puckett, Hartman & Carter,* all of Indianapolis, for appellee.

CRUMPACKER, J.—It is undisputed that on August 10, 1953, the appellants, as parties of the first part, and the appellee, as party of the second part, entered into a written contract which, omitting signatures, is in the following words and figures:

"For services rendered the party of the first part gives to the party of the second part the exclusive right to sell the following described real estate and improvements thereon, for a period of nine months from date thereof.

"Lots numbered 53; 54; 55; 56; 57; 62; 63; 64; 65; 66; 67; 68; 69; 70; 71; 72; 73; 74; 77; 78; 79; 80; 81; 82, in Shadeland Terrace, an addition in Lawrence, Marion County, Indiana, as per plat thereof recorded in Plat Book 21, pages 101 and 102 in the office of the Recorder of Marion County, Indiana.

"The party of the first part, his heirs or assignee to pay to John C. Turpin, his heirs or assignee, a sum equal to 5% of the selling price of any of the above described properties as the same are sold and transactions consummated.

"WHEREAS, Richard F. McKenna and Ruth McKenna, husband and wife have entered into a certain option agreement with John C. Turpin in respect of the sale of certain lots in Shadeland Terrace, an Addition to the Town of Lawrence, which agreement is dated this 10th day of August, 1953; and

"WHEREAS, John C. Turpin has agreed to procure for said McKennas, construction loan monies for the purpose of financing the erection of dwelling houses and buildings on said lots and permanent mortgages thereafter to the purchaser of said improved lots on terms to be mutually agreed upon between the parties to said agreements and to this agreement.

"NOW THEREFORE, if said John C. Turpin procures construction monies on terms to be mutually agreed between said parties and further procures for said McKennas permanent mortgages on the sale of said lots as improved, then the said option agreement shall remain in full force and effect; otherwise, said option agreement shall be void."

On January 19, 1954, when the above contract still had approximately four months to run, the appellants notified the appellee in writing that they were rescinding said contract, would no longer recognize it as

binding and that all his rights thereunder were terminated. The appellee thereupon brought this suit by a complaint in four paragraphs. The first alleges that the appellants are selling dwelling houses erected on the lots described in said contract without paying him for his services. That it was the intention of the parties at the time said contract was made that the lots described therein were to be subject to a lien in favor of the appellee as security for the payment of his commissions which total $14,100.00. He therefore asks judgment in the sum of $14,100.00 and the foreclosure of his said lien. The second paragraph of said complaint alleges full performance on the part of the appellee of all covenants in the contract on his part to be performed and a refusal by the appellant to pay him the agreed 5% of the sale price of the 13 dwelling houses sold. The third paragraph seeks the recovery of the 5% commissions on the sale price of 13 lots and dwelling houses described in the contract which he alleges he would have sold if he had not been prevented from doing so by the appellants. The fourth paragraph of complaint merely alleges the contract and its breach and asked damages in the sum of $16,450.00. The first paragraph of the complaint, which seeks the foreclosure of a lien, was amended twice, the last pleading in respect thereto being designated "third amended first paragraph of complaint." The record, as of March 21, 1955, shows the following entry: "Comes now the plaintiff, John C. Turpin, by counsel, and dismisses his third amended first paragraph of complaint only." Upon trial of the case the court found for the appellee, that the appellants had breached the contract involved by refusing to permit the appellee to continue to perform his part thereof although he was ready and willing to do so and assessed his damages at $4,993.75. The court, evidently believing that the dis-

missal of the third amended first paragraph of complaint revived and reinstated the first paragraph of second amended complaint, decreed that the appellee should have an "equitable lien" in that amount against 13 lots therein described and ordered said lots sold to pay said lien.

An amended pleading takes the place of the original which goes out of the case for all purposes. *Jackson Hill Coal, etc. Co.* v. *Bales* (1915), 183 Ind. 276, 108 N. E. 962; *Indianapolis Traction, etc. Co.* v. *Formes* (1907), 40 Ind. App. 202, 80 N. E. 872. It is obvious at once that the first paragraph of the second amended complaint, upon which the court based its decision setting up and foreclosing an "equitable lien" on the property involved, was out of the case when said decree was entered and therefore so much thereof as pertains to a lien is wholly outside the issues. A decree in equity, like a judgment at law, cannot stand when it has no pleading to support it. 30 C. J. S., Equity, §604. Where the pleading which sets up the subject matter has been stricken from the record, it is error to pronounce a decree thereon affecting the parties' rights. *Palmer* v. *Newman* (1922), 91 W. Va. 13, 112 S. E. 194. In the case before us the matter of an equitable lien was set up by the first paragraph of the second amended complaint. This was taken out of the case by the third amended first paragraph of the complaint which in turn went out upon dismissal and it was therefore error to predicate a decree thereon. Nor does the evidence indicate that equity requires that a lien on the property involved be established and foreclosed. The contract in suit makes no provision for a lien and certainly such a provision cannot be read into a written contract upon oral testimony. We have found no authority for the proposition that a broker is entitled to

an equitable lien on property where there has been nothing more than a breach of the agreement to pay him a commission for its sale. See *Gosslin* v. *Martin* (1910), 56 Ore. 281, 107 P. 957.

It seems to us that the contract in suit is a simple one. The appellants owned certain lots in Shadeland Terrace, Lawrence, Indiana. They needed money to finance the construction of houses thereon. They agreed with the appellee that if he procured for them "construction monies on terms to be mutually agreed upon between the parties and further procure for said McKennas permanent mortgages on the sale of said lots as improved," then and in that event the appellee was to have the exclusive right, for a period of nine months, to sell said improved lots for a commission of 5% of the sale price payable at the consummation of each transaction. If he failed to procure such money and arrange for said permanent mortgages then he was to have no right to sell the property involved.

The undisputed evidence indicates that the appellee procured for the appellants the loan of enough money to enable them to build houses on four of the lots involved, all of which were sold for $11,750.00 each and for which the appellee was paid the stipulated commission. Thereafter the appellee procured no construction money whatsoever for the appellants' use nor did he sell, directly or indirectly, any of the houses that had been erected on any of the appellants' lots. In the first place he says he furnished no construction money for the improvement of the appellants' remaining lots because their credit standing was not sufficient to induce anyone or any financial institution to loan them the money. However that may be, that was the task the appellee undertook to perform when he made the contract sued on and the undisputed evidence shows that he failed to per-

form it. Secondly, he says he failed because the appellants unlawfully rescinded the contract while it still had approximately four months to run and in that four months he would have procured the money if he had been permitted to do so. Assuming for the sake of the discussion that the appellants had not repudiated the contract and, before it expired by its own terms, the appellee procured enough money for the appellants' use to enable them to build houses on their remaining lots, the appellee still had to sell the improved lots to earn his stipulated commission. This he would not have been permitted to do because, prior to the rescission of the contract by the appellants, he had lost his real estate broker's license.[1] In other words, when the appellee lost his broker's license he rendered further performance of the contract on his part lawfully impossible.

The appellee contends however that although the contract gives him the exclusive right to sell the improved lots, it places no obligation on him to do so as a condition precedent to being paid the stipulated commission, and if and when said lots were improved and sold by the owners, 5% of the sale price became due and owing to him. Such a construction of the contract would be fatal to the appellee's case. The mere permission to a broker to sell property within a specified time without placing any

---

1. Sec. 63-2407, Burns' 1951 Replacement. "On and after October 1, 1949, it shall be unlawful for any person, firm, partnership, association or corporation to act as a real estate broker or real estate salesman without first having procured a license issued by Indiana real estate commission and to have kept the same unrevoked after issuance. Upon conviction a fine of not less than fifty ($50.00) dollars nor more than one thousand ($1,000) dollars to which shall be added the amount of any real estate commission paid or earned on such violation, shall be imposed for each violation of this act (§§63-2401—63-2423). Each transaction shall be regarded as a separate offense and shall be punished as such."

obligation on him to do anything in respect thereto is a *nudum pactum* which may be revoked at any time. 8 Am. Jur., Brokers, §57. This the appellants did before a single lot was sold for which the appellee had not been paid.

The contract in suit contains no special agreement that the stipulated commission will be paid to the appellee in the event any of the lots are sold during the life of the contract regardless of who, including the owner, makes the sale. It merely gives to the appellee the exclusive right to sell the lots for a period of nine months from August 10, 1953, and stipulates that he shall be paid a sum equal to 5% of the selling price of any of said lots "as the same are sold and transactions consummated." In *Thomas* v. *Hennes* (1922), 78 Ind. App. 275, 135 N. E. 392, Hennes listed property with Thomas for sale with the following stipulation: "In case sale is made in the above stated time I agree to pay Fred Thomas for his services 2% on the sale price of said farm." Hennes sold the farm himself without the assistance of Thomas while said listing contract was still in force and Thomas brought suit for the stipulated commission. The court held that the contract contemplated a sale made by Thomas, or at least as the result of his efforts, and was not broad enough to include a sale made by the owner through his own efforts or the efforts of some other broker. In the light of this holding we conclude that the "sales" contemplated by the contract in suit refer and include only such sales as were made by the appellee or at least through his efforts. The undisputed evidence discloses that he made none directly or indirectly.

We agree however that even though the appellee is not entitled to stand on the contract and recover the

stipulated commissions, if the appellants unlawfully rescinded the same while he stood ready, willing and able to perform his part thereof, he would be entitled to recover resulting damages. Thereby all money laid out in advertising and showing the property, together with the value of his time, could be recovered as well as damages measured by the stipulated commissions upon proof that he could have sold the lots except for the appellants' repudiation of the contract. A careful examination of the briefs of counsel discloses no evidence upon which damages measured as above indicated could be predicated. Furthermore, it appears without dispute that on January 19, 1954, when the appellants repudiated the contract in suit, the appellee had no license to sell real estate in Indiana and had not had one since January 1 of that year. Since said contract was essentially a real estate broker's contract, the appellee, by permitting his license to lapse, made lawful performance on his part impossible and rescission by the appellants was justified.

We are convinced that the decision of the court herein is contrary to law and therefore the judgment entered thereon is hereby reversed and the cause is remanded to the Marion Superior Court No. 1 with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 151 N. E. 2d 303.