# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MATTHEW S. LOVE**
Feiwell & Hannoy, PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
EDWARD P. DECHERT:

**BETH A. MACDONALD**
Davis & MacDonald Law Firm
Kokomo, Indiana

**FILED**

Jun 18 2014, 9:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  34A02-1311-PL-980 |
| | ) | |
| EDWARD P. DECHERT, TRUSTEE OF THE | ) | |
| BANKRUPTCY ESTATE OF JOHN E. SMITH, | ) | |
| Appellee-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ISLEY'S PLUMBING, INC., | ) | |
| Appellee-Cross Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable Brant J. Parry, Judge
Cause No. 34D02-0910-PL-1191

**June 18, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Wells Fargo Bank, N.A. ("Wells Fargo"), as successor in interest to Washington Mutual Bank, F.A. ("Washington Mutual"), appeals the trial court's denial of its motion to set aside default judgments against it in favor of Edward P. Dechert ("Dechert"), as bankruptcy trustee for John E. Smith Builders Inc. ("Smith"), and Isley's Plumbing, Inc. ("Isley").

We affirm.

**Issues**

Wells Fargo raises several issues for our review. We restate these as whether the trial court abused its discretion in denying Wells Fargo's motion to set aside the default judgments because:

    I.    Dechert and Isley abandoned the default judgments as a result of amended pleadings, thereby vacating the default judgments;

    II.    Certain pleadings were not properly served upon Wells Fargo; and

    III.    Default judgments and windfalls are disfavored in Indiana.

**Facts and Procedural History**

In 2002, Washington Mutual was assigned as the mortgagee holding a mortgage interest on residential real estate in Howard County. Heather Stone ("Homeowner") was the mortgagor. In 2008, in the wake of the financial crisis that began in 2008, JP Morgan Chase Bank, N.A., ("JP Morgan") acquired substantial portions of Washington Mutual's assets, including Homeowner's mortgage. (App'x at 188-89.)

2

Homeowner's home suffered fire damage, and she entered into an agreement with Smith to rebuild the structure. A payment dispute arose, and on October 13, 2009, Smith filed a complaint to foreclose on a mechanic's lien on Homeowner's property. Among the named defendants were Washington Mutual and Isley. Summonses were served upon Homeowner, Washington Mutual, and Isley. The summons served upon Washington Mutual was sent to CT Corporation System, Washington Mutual's registered agent in the State of Indiana.

Isley had performed work on Homeowner's property as part of the rebuilding of the home. On December 2, 2009, Isley filed a crossclaim seeking to foreclose on a claimed mechanic's lien of its own. Smith and Isley each claimed their liens had priority over that of the other party, as well as over the lien associated with the mortgage interest held by Washington Mutual.

Smith entered bankruptcy, and on September 1, 2010, Edward P. Dechert, as trustee of Smith's bankruptcy estate, filed a petition to substitute Dechert as a party in interest. The trial court granted Dechert's petition on September 2, 2010. Dechert's petition and the trial court's order were served upon all the parties, including Washington Mutual, again at the address of its registered agent in Indianapolis.

On July 20, 2012, Isley filed a motion to amend its crossclaim. In the motion, Isley alleged that Washington Mutual had never filed any response to Isley's initial crosscomplaint. In its amended complaint, Isley sought an "in rem judgment against Washington Mutual or its successor because of the cloud on title caused by an entity with no

3

Indiana presence or manner to contact it." (App'x at 80.) The trial court granted Isley's motion. In apparent recognition of JP Morgan's status as successor in interest to Washington Mutual, the motion, the amended crossclaim, and the trial court's order were all served upon JP Morgan's registered agent—which, like Washington Mutual, was at the Indianapolis address for CT Corporation System.

Also on July 20, 2012, Isley filed a request to serve notice of the crossclaim by publication, since "[t]he correct addresses for Washington Mutual Bank, F.A. and JP Morgan Chase are unknown." (App'x at 85.) The trial court granted the request the same day; the order was served upon JP Morgan's and Washington Mutual's registered agent, CT Corporation System, in Indianapolis. Notice by publication in three editions of the Kokomo Tribune was completed on July 31, 2012.

On August 9, 2012, Dechert moved to amend the complaint originally filed by Smith. In the amended complaint, Dechert alleged that both Washington Mutual and JP Morgan had received notice by mail of numerous filings in the case. In support of that allegation, Dechert included documents obtained from CT Corporation System documenting the delivery of the Summons, Complaint, several motions, and requests for discovery. The trial court granted Dechert's motion on August 9, 2012.

On August 27, 2012, Dechert filed a motion for entry of default judgment against Washington Mutual; Dechert's motion was served upon Washington Mutual through its registered agent, CT Corporation System. On October 1, 2012, Isley also filed for entry of

4

default judgment against Washington Mutual; Isley's motion was served upon both Washington Mutual and JP Morgan, again through CT Corporation System.

The trial court granted default judgments against Washington Mutual in favor of Dechert and Isley, and conducted a hearing on October 19, 2012 to determine other issues in the case. Homeowner failed to appear, and the court entered judgment against Homeowner and in favor of Dechert and Isley, and determined that Isley's mechanic's lien held priority over Dechert's lien.

On December 4, 2012, Homeowner filed a motion to set aside the default judgment entered against her. On February 4, 2013, a hearing was conducted, after which the default judgment against Homeowner was set aside. Homeowner was also granted permission to file a belated responsive pleading to Dechert's amended complaint.

On March 22, 2013, Dechert moved for and was granted permission to file a second amended complaint, which revised certain allegations against Homeowner and Isley.

On April 16, 2013, JP Morgan's interest in Homeowner's mortgage was transferred by endorsement to Wells Fargo. (App'x at 190-191.) After this point, various pleadings of Dechert and Isley were served upon not only Washington Mutual, but also Wells Fargo.

On May 28, 2013, Wells Fargo moved to amend Washington Mutual's name, replacing it with that of Wells Fargo; the trial court granted this motion. Wells Fargo also moved to vacate the default judgments entered in favor of Smith and Isley. Wells Fargo claimed that it was entitled to set-aside of the judgments under Trial Rule 60(B)(4).

5

On August 30, 2013, the trial court denied Wells Fargo's motion, noting that Wells Fargo did not properly notify the Howard County Recorder of the assignment to Wells Fargo of Homeowner's mortgage and that Dechert and Isley served notice upon Washington Mutual through the registered agent information maintained by the Indiana Secretary of State. Wells Fargo filed its motion to correct error on September 30, 2013; the trial court denied that motion, as well.

This appeal ensued.

**Discussion and Decision**

Standard of Review

Wells Fargo appeals the trial court's denial of its motion to correct error, which itself challenged the trial court's denial of Wells Fargo's motion to set aside the default judgments. Our standard of review is the same for each motion: review of such motions is within the sound discretion of the trial court. We will not reverse the trial court's decision unless there has been an abuse of that discretion, which occurs when the decision is contrary to the facts and circumstances before the court, or when the court has erred as a matter of law. And even when an abuse of discretion has occurred, we will not reverse the judgment of the trial court where any error was harmless.

As our supreme court has observed:

> A default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party. It is an extreme remedy and is available only where that party fails to defend or prosecute a suit. It is not a trap to be set by counsel to catch unsuspecting litigants.

6

Allstate Ins. Co. v. Watson, 747 N.E.2d 545, 547 (Ind. 2001) (citations and quotations omitted).

Trial Rule 60(B) provides that "on motion and upon such terms as are just," a party may obtain relief from a default judgment under certain circumstances. Wells Fargo's appeal centers in part on the application of Rule 60(B)(4), which may permit relief from judgment when "entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings." Whether to set aside a default judgment is a matter of equity. Brimhall v. Brewster, 864 N.E.2d 1148, 1154 (Ind. Ct. App. 2007) (concluding that "the equities were with" the appellees and affirming set aside of default judgment under "exceptional circumstances"), trans. denied. Thus, "[t]he trial court should use its discretion to do what is 'just' in light of the unique facts of each case." Watson, 747 N.E.2d at 547. The party seeking relief from judgment must bear the burden of showing sufficient grounds for relief. Front Row Motors, LLC v. Jones, 5 N.E.3d 753, 758 (Ind. 2014).

<u>Effect of the Second Amended Complaint upon the Default Judgments</u>

Wells Fargo first argues that Dechert's decision to file a second amended complaint, and Isley's response to that complaint, resulted in the automatic vacation of the default judgments the trial court entered against Wells Fargo.

Wells Fargo rests this assertion on case law that interprets the function of amended pleadings. Specifically, Wells Fargo draws our attention to a series of cases in which this Court or the Indiana Supreme Court held that an amended pleading took the place of an

7

original pleading for purposes of a claim of relief. Among these cases is <u>DeHart v. Anderson</u>, where the question centered on when a motion to dismiss was timely—in relation to the original complaint, or an amended complaint. 178 Ind. App. 581, 587, 383 N.E.2d 431 (1978).

DeHart relied upon <u>McKenna v. Turpin</u>, for the proposition that "[a]n amended pleading takes the place of the original which goes out of the case for all purposes." 128 Ind. App. 636, 641, 151 N.E.2d 303 (1958). In <u>McKenna</u>, an amended complaint had been superseded by subsequent amended complaints. <u>Id.</u> The trial court granted equitable relief on the basis of a paragraph that appeared in a previously superseded pleading. <u>Id.</u> On appeal, this Court held that the equitable remedy awarded at trial was without a basis in the pleadings because "[w]here the pleading which sets up the subject matter has been stricken from the record, it is error to pronounce a decree thereon affecting the parties' rights." <u>Id.</u>

Wells Fargo insists that the case law on Trial Rule 15 "couldn't be clearer" in its support of Wells Fargo's argument. (Appellant's Br. at 10.) Yet in <u>McKenna</u>, the plaintiffs had amended out of their allegations the basis upon which the trial court granted relief. That is not so in the case presently before the Court. Here, the second amended complaint and responsive pleadings to it had no substantive bearing on the basis upon which judgment was entered against Wells Fargo; these pleadings all centered upon the dispute among Dechert, Isley, and Homeowner. This is also unlike <u>DeHart</u> and <u>Anderson v. Anderson</u>, 399 N.E.2d 391 (Ind. Ct. App. 1979), upon which Wells Fargo relied before the trial court. In <u>DeHart</u>, the amendment bore upon when a responsive pleading could be considered timely filed.

8

DeHart, 178 Ind. App. at 587-88. In Anderson, the dispute bore upon a similar matter: when and whether a claim of error with respect to a trial court's dismissal of a complaint had been waived. Anderson, 399 N.E.2d at 406-08.

Here, none of the amended pleadings undermined any basis upon which the default judgments against Wells Fargo were issued. Wells Fargo advances no other basis upon which we are to conclude that the "general rule" concerning the effect of amended pleadings, Anderson, 399 N.E.2d at 406 n. 30, operates absolutely to estop Isley and Dechert from enforcing their judgments against Wells Fargo. Accordingly, we find no error on this issue.

<u>Service of Process</u>

Next, Wells Fargo contends that Dechert's first amended complaint and Isley's first amended crossclaim were not properly served upon Wells Fargo's predecessor-in-interest, Washington Mutual, and as a result the trial court should have set aside the default judgments.

Wells Fargo's argument relies upon trial rules regarding the timing of service of process on the first amended complaint and entry of default judgment in Dechert's favor. Trial Rule 4.13(B)(6) requires that service of a summons by publication include "[a] clear statement that the person being sued must respond within thirty [30] days after the last notice of the action is published, and in case he fails to do so, judgment by default may be entered." Trial Rule 60(B)(4) provides discretion to our trial courts to afford relief from judgments, including default judgments, when "entry of default or judgment by default was entered against such party who was served only by publication and who was without actual

9

knowledge of the action and judgment, order or proceedings." Indiana courts have interpreted the rule as requiring a litigant to satisfy all three elements—entry of default, notice solely by publication, and lack of actual knowledge of the proceedings—in order to obtain relief from judgment. Breneman v. Slusher, 768 N.E.2d 451, 462 (Ind. Ct. App. 2002), trans. denied.

Wells Fargo notes that judgment in Dechert's favor was entered on August 27, 2010, less than thirty days after the final publication of the summons associated with the first amended complaint. Noting this timeframe in light of Rule 60(B)(4), Wells Fargo scrutinizes the exact means used to accomplish service of process on the first set of amended pleadings and challenges the timing between the filing of the first amended complaint and crossclaim and the entry of the default judgments.

The original pleadings were served upon Washington Mutual's and JP Morgan's agent, CT Corporation System, in 2009 and 2010. While Wells Fargo is correct that the timing of the judgments conflicts with trial rules as to the filing dates of the amended pleadings, the judgments do not conflict with the trial rules as to the filing dates of the original complaint and crossclaim. These pleadings were served by mail upon Washington Mutual, Wells Fargo's predecessor in interest. And our review of the record reveals no substantive differences in the allegations made in the original and first amended sets of pleadings. As a result, Washington Mutual (and thus Wells Fargo) was served with notice of the suit by mail—that is, not by publication, as contemplated by Trial Rule 60(B)(4). Accordingly, Wells Fargo was not entitled to relief from judgment under Rule 60(B)(4).

10

In its briefing before both this Court and the trial court, Wells Fargo questioned the means by which Dechert obtained documentation of service of process from CT Corporation System, and implied that service upon Washington Mutual and JP Morgan was inappropriate because the takeover of Washington Mutual by the Federal Deposit Insurance Corporation ("FDIC") was well publicized.[1] Yet contrary to our appellate rules, Wells Fargo provides no authority for these arguments. See Ind. Appellate Rule 46(A)(8). Nor does it articulate in any manner how it was prejudiced by the alleged defects in service. And Wells Fargo's insistence that service of process was defective as to Wells Fargo when there is evidence that Washington Mutual, Wells Fargo's predecessor-in-interest on the mortgage, received effective service of process in the original pleadings, runs contrary to Wells Fargo's insistence that it stands in all respects in Washington Mutual's place in this case. We thus decline to reverse the trial court's denial of Wells Fargo's motions to set aside the judgments on the basis of defective service of process.

However, we note that Dechert's decision to file the first amended complaint was inappropriate. Under Indiana's notice-pleading regime, a complaint, counterclaim, crossclaim, or third-party claim should contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled." T.R. 8(A). Here, where service had been accomplished, the appropriate procedure for Dechert to follow was to establish that service of process (in whatever form)

---

[1] Wells Fargo characterizes Isley's decision to serve process upon JP Morgan as "a mystery." (Appellant's Br. at 14.) Yet exhibits Wells Fargo submitted in support of its motion to set aside the default judgments clearly state that Washington Mutual "is currently part of JP Morgan Chase Bank, National Association." (App'x at 189.)

11

had been completed upon Washington Mutual, and then to move for default judgment under Trial Rule 55—without filing a complaint alleging additional facts not necessary to proof of the merits of the case. Because the allegations in the first amended complaint do not differ on the elements of the causes of action, there was fair notice of Dechert's claims upon which the trial court could enter a default judgment, and there was a nine-month delay between that judgment and Wells Fargo's appearance in the case.

Parties who pursue a similar procedure may not find themselves in a similar position, however, particularly with respect to changes in substantive allegations entitling a party to relief. Litigants are, therefore, warned accordingly.

### Defaults and Windfalls Disfavored

Finally, Wells Fargo argues that the trial court abused its discretion when it denied the motion to set aside the default judgments because Indiana courts disfavor default judgments and windfalls.

We first address Wells Fargo's contention that Dechert and Isley would receive a windfall from Wells Fargo's default. Wells Fargo directs us to Sheek v. Mark A. Morin Logging, Inc., which recites the long-established principle that "the law disfavors a windfall." 993 N.E.2d 280, 289 (Ind. Ct. App. 2013), trans. denied. That statement, however, belongs in a larger context:

> It is axiomatic that a party injured by a breach of contract may recover the benefit of its bargain but is limited in its recovery to the loss actually suffered. That is, a party injured by a breach of contract may not be placed in a better position than it would have enjoyed if the breach had not occurred. In addition, the law disfavors a windfall or a double recovery.

12

Id. (citations omitted).

Thus, a windfall is a recovery that would leave a party better off than "if the breach had not occurred." Id. Wells Fargo does not direct us to any material in the record that establishes that Dechert and Isley are put in a better position vis-à-vis the other party to their contracts—namely, Homeowner—by Wells Fargo's default. Nor has Wells Fargo established that Dechert and Isley would recover less had no default occurred: Wells Fargo states in a trial-level brief the amount of the original loan ($104,346.00), but provides no evidence in the record establishing the outstanding balance on the mortgage loan. (App'x at 211.) As Wells Fargo itself observes in its brief, the default judgment entered against Homeowner was vacated and there has thus been no determination of the damages to which Dechert and Isley may be entitled; whether Dechert and Isley would receive a windfall under the circumstances, or whether Wells Fargo would recover its debt in full from Homeowner, is not known. Simply put, Wells Fargo has failed to establish any basis from which we can conclude that the trial court was compelled to conclude that Dechert and Isley stood to gain a windfall from the default judgment. The axiom that the law disfavors a windfall goes only so far; we find no abuse of discretion in the trial court's conclusion that it does not extend to this case.

Finally, we turn to the question of our courts' policies that disfavor default judgments, as a result of which Wells Fargo argues that the trial court abused its discretion when it did not set aside the default judgments. Wells Fargo insists that the injustice it would suffer far outweighs the interests of the winning parties and society in the finality of litigation, directs

13

our attention to the "wiping out" of "a mortgage in the original amount of $104,346.00," and insists that Dechert's and Isley's interests are "minor" because they seek a "windfall." (Appellant's Br. at 16.)

Yet notice of the suit was accomplished on Wells Fargo's predecessors in interest in 2009, and no action was taken by any mortgage holder until months after the default judgments were entered. Thus, unlike many default judgments that have found our courts' disapproval, the default judgments in this case are not the result of "a trap … set by counsel to catch unsuspecting litigants," but rather are a result of Wells Fargo and its predecessors in interest sitting on their rights.[2] Allstate, 747 N.E.2d at 547 (citation and quotations marks omitted). Moreover, as we noted above, there is no evidence establishing the outstanding balance on Homeowner's mortgage loan—only the initial value of the note—so there is no evidence to establish the scope of the harm of which Wells Fargo complains. And the default judgments do not, as Wells Fargo seems to insist, deprive the bank of all remedies; they serve instead to demote Wells Fargo's lien in priority below those of Dechert and Isley.

Under these circumstances, we cannot conclude that Wells Fargo carried its burden of showing that the equities were in its favor, and we accordingly find no abuse of discretion in the trial court's denial of the motion to set aside the default judgments.

---

[2] Wells Fargo insists that it, and not Washington Mutual or JP Morgan, was the appropriate party to receive summonses. Yet there is no evidence of record to that effect, and as the trial court observed, the appropriate course of action if the bank had obtained ownership of the mortgage lien before April 2013 was to file accordingly with the county recorder.

14

**Conclusion**

Dechert's and Isley's second amended complaint and crossclaim did not vacate the default judgments entered in their favor against Wells Fargo. The trial court did not abuse its discretion when it denied Wells Fargo's motion to set aside the default judgments on the basis of defective service of process. The trial court did not abuse its discretion on policy grounds when it denied the motion to set aside the default judgments.

Affirmed.

KIRSCH, J., and MAY, J., concur.