**ABEX CORPORATION, Appellant (Third-Party Defendant Below),**

v.

**Robert VEHLING, Appellee and Cross-Appellant (Third-Party Plaintiff Below).**

**No. 2–881A284.**

Court of Appeals of Indiana, Second District.

Jan. 19, 1983.

Rehearing Denied Feb. 18, 1983.

---

Alan H. Lobley, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

William D. Hall, Indianapolis, for appellee and cross-appellant.

SULLIVAN, Judge.

Claiming that third-party defendant Abex Corporation (hereinafter Abex)[1] has failed to pay his broker's commission, third-party plaintiff, Robert Vehling (hereinafter Vehling), intervened in a suit originally brought by Abex, the seller, against defend-

---

1. References in this opinion to Abex include those references involving Abex's predecessor

ant, R.B. Manufacturing, Inc., et al. (hereinafter R.B.), the buyer, for breach of a sale agreement. From the trial court's entry of summary judgment in favor of Vehling, Abex appeals. In his cross-appeal, Vehling challenges the trial court's *nunc pro tunc* order filed on March 27, 1981 which provided for post-judgment but not pre-judgment interest. Resolution of the case pivots around two issues:

1. Whether there were any genuine issues of material fact rendering summary judgment inappropriate; and

2. Assuming that Vehling is entitled to his broker's commission, whether the court erred in denying him pre-judgment interest.

We affirm the summary judgment, reverse the denial of pre-judgment interest, and remand for further proceedings to determine the time from which interest is to be computed.

It is a well-settled precept that summary judgment is permissible only where the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits and testimony reveal that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). Furthermore, in ascertaining whether there exists a genuine issue of material fact, the facts as represented by the *opponent's* affidavits must be accepted as true and any doubt must be resolved against the proponent of the summary judgment. *Stapinski v. Walsh Const. Co., Inc.* (1979) Ind., 395 N.E.2d 1251, 1253.

On June 17, 1977, Abex's predecessor, Stanray Corporation, filed suit against R.B. for breach of a written sale agreement entered into by Stanray and R.B. on December 20, 1976 in which R.B. agreed to purchase Stanray's machinery, equipment, tools, office furniture, inventories and the realty in which these items were located for a total price of $1,500,000. Under the

in interest, Stanray Corporation.

terms of this agreement, the sale of the personalty was to be consummated upon R.B.'s delivery of a promissory note for one million dollars, secured by a security agreement signed by R.B.'s principal shareholders. Both the promissory note and the security agreement were executed and delivered on the day that the contract was created. R.B. also agreed to purchase the realty for $500,000, an amount to be paid in cash at the closing which was to have taken place on April 29, 1977. A default judgment for breach of contract was subsequently entered against R.B. on December 29, 1978, and damages in the amount of $832,561.23 with interest thereon was assessed.

In his petition to intervene filed on July 6, 1977 and his third-party complaint of July 21, 1977, Vehling initially claimed that he was entitled to a broker's commission of 10% of the total purchase price which included both the personalty and the realty, under the terms set forth in a Stanray inter-office memorandum dated December 23, 1976, and written by Stanray's attorney, G.R. Canty, Jr.[2] The pertinent language of this memorandum states:

> "Mr. Vehling has further been advised that our obligations for the payment to him of the 10% commission by reason of the sale will not arise until the entire $1,500,000.00 will have been paid to Stanray. At the same time, we are providing him with draws against such sum, initially in the amount of $5,000.00 and, thereafter, on the first of each month, commencing with January and ending with April, at a rate of $1,500 a month. Mr. Vehling is also negotiating the settlement of our real estate commissions with McClain Matthews Realtors; he has also been requested to notify such realtors of the sale (i.e. to withdraw the plant from the market)." Record at 332.

On September 21, 1980, Vehling filed a second amended third-party complaint in which his basis for recovery was the separate written contract between Abex and R.B. The amount sought was limited to 10% of the $1,000,000.00 for the sale of the personal property. In this complaint, Vehling stated that he had already received $9,500.00 from Abex as an advance on his commission, leaving a balance of $90,500.00. In its answer, Abex denied, on three grounds, any liability to Vehling for broker's fees:

1. That any purported agreement for the payment of a commission was illegal and therefore unenforceable in that Vehling did not possess a valid real estate broker's license as required by I.C.1971, 25–34–1–8, at any time during the relevant transactions;

2. That any agreement for commission is void because it was not in writing and therefore violated the Statute of Frauds; and

3. That even if an enforceable broker's contract existed, it was not supported by adequate consideration in that Vehling failed to produce a buyer ready, willing and financially able to purchase the assets that defendants (R.B.) had agreed to buy.

As part of its answer, Abex counter-claimed to recover the $9,500 which it had advanced to Vehling. According to Abex:

> "On or about December 23, 1976, Stanray Corporation entered into an arrangement with Robert Vehling, pursuant to the terms of which Vehling agreed that he was to be compensated in the amount of ten percent (10%) of the gross receipts occasioned and received in cash by virtue of the sale of property to the above-named Defendants. Further, he agreed that his entitlement to such commission, and Stanray Corporation's obligation to pay it, would accrue only in the event of receipt of the purchase price from the Defendants, in cash." Record at 622.

On November 5, 1980, Vehling filed a motion for summary judgment. Abex also filed its motion for summary judgment on December 15, 1980. On March 5, 1981, the court denied third-party defendant Abex's

---

**2.** Apparently, the primary purpose of this memorandum was to commemorate the separate sale agreement between Stanray (Abex) and R.B.

motion but entered summary judgment for third-party plaintiff Vehling in the amount of $90,500, with interest at the rate of eight percent (8%) per annum as provided by law, *from December 20, 1976.* However, in its *nunc pro tunc* order of March 27, 1981, the court modified its judgment so that the interest on the $90,500 was to be computed *from March 5, 1981,* the date on which summary judgment had been entered.

In its motion to correct errors, Abex admits that "there was an oral contract to pay Vehling ten percent of the sale price of the personal property sold by Abex Corporation's predecessor, Stanray Corporation." However, Abex maintains "that there is a genuine issue of material fact as to what was the oral agreement with respect to *when and if such payment was to be due.*" Record at 666 (emphasis supplied). According to Abex, Vehling's commission "was due and payable *when* Stanray *received* the cash proceeds *from the sale of the realty and personal property.*" Record at 666 (emphasis supplied). Under a separate subheading, Abex also argues that summary judgment was improper in that "there was an issue of fact as to the legality of the agreement." Abex contends that "[i]f, as alleged in his original complaint and as his testimony was in his deposition, his agreement was for the sale of the real and personal property, the agreement was not enforceable because Vehling was not a licensed realtor." Appellant's brief at 22–23. This argument is premised on I.C. 25–34–1–8 (Burns Code Ed.1971) which states in pertinent part that:

3. Vehling's amended complaint and his brief allege that his entitlement to broker's fees is predicated upon the separate written contract between Abex and R.B. However, although Abex admits that a contract for broker's commission exists, Abex asserts that this was an oral, not a written contract. Viewing the evidence in the light most favorable to Abex, we accept appellant's assertion as true and therefore, decide this case on the underlying premise that Vehling's claim arises out of an oral contract.

We are cognizant of the fact that in its answer to Vehling's second amended complaint, Abex had initially contended that such an agreement was unenforceable in that it violated the Statute of Frauds. Abex makes no refer-

"it shall be unlawful for any person, firm, partnership, association, or corporation to act as a *real estate broker* or real estate salesman without first having procured a license issued by Indiana real estate commission and to have kept the same unrevoked after issuance."

I.

We first address the sub-issue concerning the legality of the brokerage agreement[3] between Vehling and Abex.

Appellant's reasoning, as we discern it, is that because there is evidence of record indicating that Vehling's contract with Abex may have been to receive a broker's commission of 10% of the total purchase price which encompassed both the realty and the personalty, not having been a licensed real estate broker during the relevant negotiations, Vehling is statutorily prohibited from recovering *any* commission.

■ Appellant's argument is untenable for several reasons. First, Abex itself states in its motion to correct errors that the oral contract was to pay Vehling a 10% commission of the sale price of the *personal property.* Furthermore, attached to appellant's own motion for summary judgment was George Canty, Jr.'s affidavit in which he declares that:

"Robert Vehling was instructed, and did agree, that his entitlement to a commission or fee as a consequence of the sale of the Remco-Indianapolis Division

ence to this contention in its brief, and indeed, has failed to preserve this issue on appeal in omitting it from its motion to correct errors. However, for the sake of clarity, we note that the statute (I.C. 32–2–2–1 (Burns Code Ed. 1973)) which provides that a contract for payment of a broker's commission arising out of the sale of *real estate* is invalid and unenforceable unless such a contract is in writing, is inapplicable to this case for the simple reason that Vehling's claim is based on a brokerage agreement involving the sale of personal, not real, property. Therefore, the trial court did not err in enforcing this contract despite the absence of a written instrument. *See generally, Department of Treasury v. Ice Service* (1942) 220 Ind. 64, 41 N.E.2d 201, 203.

properties to R.B. would not accrue and be payable until such time, and only at such time, as Stanray Corporation might receive cash proceeds of such sale in the amount ($1,500,000) specified in a certain agreement of sale executed December 20, 1976, by and between Stanray Corporation and R.B., *less any real estate commissions payable to Stanray Corporation's realtors.* Record at 633 (emphasis supplied).

Additional indication of the terms of the brokerage agreement is gleaned from the written sale contract between Abex and R.B. drafted by Abex's attorney, Canty, which includes this provision:

"Stanray *admits* that it has entered into *brokerage arrangements with McClain-Matthews,* realtors, of Indianapolis, Indiana, *in respect of the sale of the Realty,* and with *Mr. Robert W. Vehling in respect of the sale of the Assets,* and that it will satisfy or cause to be satisfied, any commissions due any or either of them upon the consummation of the sale contemplated under this Agreement, and that it will indemnify the Purchaser from and against any and all claims made by such brokers or either of them in the event of or upon such consummation." Record at 37 (emphasis supplied).

Moreover, Vehling's second amended complaint sought to recover broker's fees based only on the separate sale price of the personalty and made no attempt to recover a commission on the sale of the realty. Abex correctly observes that Vehling's *original* complaint did seek to recover a commission based on a percentage of the total purchase price. However, the general rule is that the filing of an amended complaint takes the original complaint out of the record. *State v. Larue's, Inc.* (1959) 239 Ind. 56, 154 N.E.2d 708; *McKenna v. Turpin* (1958) 128 Ind.App. 636, 151 N.E.2d 303, 305.[4] Abex does not claim error in the court's decision granting Vehling leave to file a second amended complaint, therefore Abex cannot now argue that it was Vehling's original complaint, rather than the amended one, which validly set forth his present claim.

Abex relies upon *Folsom v. Callen* (1956) 126 Ind.App. 201, 131 N.E.2d 328 in arguing that "[i]f Vehling's agreement did include the real estate, the whole agreement is unenforceable." Appellant's brief at 23. The unlicensed broker in *Folsom* claimed that he was entitled to a commission based on a lump sum for the sale of a business, including its furniture, fixtures, good-will and a 19-year leasehold. In that case, although the broker denied involvement in the sale of the leasehold, the court found that the transaction he undertook was "calculated to result in the leasing or renting by the purchasers of the real estate upon which the hotel building and the furniture, fixtures and equipment was situate [sic]." *Folsom v. Callen, supra,* 131 N.E.2d at 330. That broker was clearly engaged in procuring a sale of the leasehold. Therefore, the court appropriately held that he could not recover any commission because he was not a licensed real estate broker at any time during the transactions.

In contrast are the facts in this case. Although the evidence construed in favor of Abex indicates that the time of payment of Vehling's commission was related to Abex's receipt of the entire cash proceeds for both the realty and the personalty, by Abex's own admission the brokerage agreement itself was limited to the sale of the personal property. The documents and affidavits which Abex offered as evidence indicate that it was realtors McClain-Matthews, and not Vehling, who were responsible for the realty aspect of the transaction with R.B. Therefore, *Folsom* does not control.

---

4. We are not here concerned with whether an assertion of fact in a pleading which has been replaced by an amended pleading constitutes an admission. *See Ind. State Highway Commission v. Vanderbur* (1st Dist.1982) Ind.App., 432 N.E.2d 418. We note, however, that Abex denied the pertinent allegations of the original third-party complaint. Such denial has been held to preclude use of the allegation as an admission. *Lamb v. Thieme* (1st Dist.1977) 174 Ind.App. 287, 367 N.E.2d 602.

Having concluded that a valid and enforceable contract between Abex and Vehling exists, we now focus on whether there was a genuine issue of material fact with respect to the terms governing the time of payment. Vehling contends that he was to receive his commission on December 20, 1976. However, the evidence viewed in appellant's favor, reveals that it was within the parties' contemplation when they entered into the agreement that full payment to Vehling was to coincide with R.B.'s tender of $500,000 for the realty and its payment of the promissory note. This transaction was not expected to occur until April 29, 1977 when the closing of the realty purchase was scheduled.

While Abex's main challenge is directed against the trial court's entry of summary judgment in the face of such conflicting evidence, the thrust of appellant's argument is that the court should have granted Abex's Motion for Summary Judgment. Abex asserts that its duty to pay Vehling was dependent upon R.B.'s performance under the collateral purchase agreement. This contingency, as contemplated by the parties, did not occur; at best, Abex was successful in securing what is to date the uncollected default judgment against R.B. According to appellant, because it did not receive the expected cash proceeds from which Vehling's fees were to be paid, whatever obligation Abex may have had to Vehling did not, and indeed, may not, arise.

First, we confront appellant's main contention that there was a genuine issue of material fact. The presence of a disputed fact does not necessarily render summary judgment improper where there is no conflict regarding a fact which is dispositive of the litigation. *Letson v. Lowmaster* (3d Dist.1976) 168 Ind.App. 159, 341 N.E.2d 785, 787. Moreover, unless it is material, a disputed fact does not prohibit summary judgment. A fact is material if its resolution is decisive of either the lawsuit or a relevant secondary issue. *Jones v. City of Logansport* (3d Dist.1982) Ind.App., 436 N.E.2d 1138, 1143; *Lee v. Weston* (4th Dist.1980) Ind.App., 402 N.E.2d 23, 24.

Although Abex disputes the time at which Vehling was to be compensated, it has not contested that he *earned* this commission. We deem this fact to be dispositive of this case. The question whether Vehling earned his commission, if disputed, might constitute an issue of material fact. However, a reading of the record as a whole, even in a light most favorable to appellant, does not compel us to conclude that there exists a *genuine* issue regarding the fact that Vehling is not entitled to his commission because he failed to perform services sufficient to earn this commission. We further observe that nowhere in its supporting affidavit does Abex, through its attorney George Canty, contend that Vehling did not earn his fee.

Abex argues that summary judgment was erroneously entered because "there is total disagreement as to what was the agreement as to *when* and *if* the commission was payable." According to Abex:

"There was a real dispute as to what was the agreement between Abex and Vehling. While Vehling initially alleged that the agreement was as set out in the Canty memorandum, he eventually changed his testimony to be that he was *to be paid his commission as soon as the contracts were signed, whether Abex got paid or not. Canty, in his affidavit and in his memorandum* which Vehling initially said was the contract, *stated that the agreement was that Vehling was to be paid when Abex was paid. No more glaring conflict* in the controlling or material facts can be imagined in a lawsuit over a contract *as to when a commission was to be paid.* Yet, in spite of the glaring conflict in the most material facts that could be involved in this dispute, the trial court granted summary judgment for Vehling." Appellant's Brief at 22 (emphasis supplied).

Abex demonstrates, by the manner in which it framed its argument and by its own interpretation of Canty's affidavit and memorandum, that the factual dispute revolves precisely around *when* Vehling was to be paid, and *whether* he was to be paid

despite the buyer's ultimate default on the sale agreement. Whatever the "glaring" conflict between the parties is, it does not concern whether Vehling *earned* his commission. Indeed, we would take a strained reading of appellant's brief and Canty's affidavit were we to employ language which it does not include, or construct an argument which we must assume appellant has chosen to omit.

However, even if the omission were not deliberate, we are in no position to address an argument which is neither cogently developed, much less verbalized, nor supported by citations to the record and to relevant authority. Absent a discernible argument with regard to whether Vehling earned his commission, we must deem any such issue waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Millar v. State* (1981) Ind., 417 N.E.2d 1105, 1107; *Bledsoe v. State* (1980) Ind., 410 N.E.2d 1310, 1312.

 In any event, we are convinced that under the circumstances before us Vehling earned his commission as a matter of law. As a general rule, absent a specific agreement to the contrary, a broker earns his commission when he secures a buyer on the seller's terms. *Huber v. Ryan* (7th Cir. 1965) 347 F.2d 712, 713; *In re Coho's Trust* (1966) 421 Pa. 448, 219 A.2d 657, 658; *Winter v. Toldt* (1954) 32 N.J.Super. 443, 108 A.2d 648, 650. Under Indiana law, if a binding contract is entered into by both the buyer and seller the broker is entitled to his commission. *Wilson v. Upchurch* (4th Dist. 1981) Ind.App., 425 N.E.2d 236, 238. However, if the broker cannot prove that he had effected a sale of the property, he may recover his commission if he can prove either that he had secured a buyer ready, willing and able to purchase property according to the terms listed by the seller or that by and through his procurement, a third party had entered into a valid executory contract with the seller for the purchase of the property. *See Wilson v. Upchurch, supra,* 425 N.E.2d at 238; *Bastow v. Knotts* (1956) 126 Ind.App. 152, 131 N.E.2d 155, 156; *Baker v. Brewer's Estate* (1921) 78 Ind.App. 143, 133 N.E. 397. This rule applies to brokers in general; it is not limited to real estate brokers. *Huber v. Ryan, supra,* 347 F.2d at 713.

The record discloses that Vehling's duty under the brokerage agreement was to effect a sale of the personal property. Indeed, the memorandum drafted by Abex's own attorney, Canty, reveals that Vehling's duty to effect such a sale had been fully performed on December 20, 1976, the day on which Abex and R.B. entered into a sale agreement. Implicit in the memorandum's explanation of the manner in which Vehling was to be compensated "by reason of the sale," is Abex's tacit acknowledgement that Vehling had already earned his commission. There is no real conflict over the fact that Vehling "had concluded his endeavors when he brought the parties together and executed the contract in question. There was really nothing further for him to do." *Winter v. Toldt* (1954) 32 N.J.Super. 443, 108 A.2d 648, 651.

 Indeed, Abex is estopped from denying that it entered into a binding and enforceable contract with the buyers inasmuch as the original complaint here, which resulted in a default judgment against R.B., was Abex's suit for R.B.'s alleged breach of the contract. As a preliminary to a claim of breach, Abex made the necessary allegation in its pleadings that a valid and enforceable contract with the buyers existed. It is the general rule that "allegations or admissions in pleadings in a former action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party, to the prejudice of his opponent, where the usual elements of estoppel by conduct are present." *Tobin v. McClellan* (1947) 225 Ind. 335, 73 N.E.2d 679, 684, *rehearing denied,* 225 Ind. 335, 75 N.E.2d 149; *see also* 28 Am.Jur.2d § 1, 2 (1966). *A fortiori,* the existence of the underlying sale contract cannot be denied in the same lawsuit.

Appellant seems to argue that even if a valid contract of sale had been made, Vehling is not entitled to his commission as a matter of law because the buyers subse-

quently defaulted and therefore the sale of the personalty was never "consummated." We disagree with this legal conclusion. Barring ambiguity, the interpretation, construction, or legal effect of a contract is generally within the purview of the court. *Wilson v. Kauffman* (3d Dist.1973) 156 Ind. App. 307, 314, 296 N.E.2d 432, 437.

The intention of the parties as discerned from the contract terms and surrounding circumstances is always vital to an understanding of the contract and of the relationship and rights created. *Robison v. Fickle* (2d Dist.1976) 167 Ind.App. 651, 657, 340 N.E.2d 824, 829. The sale contract here between Abex's predecessor and R.B. states:

"2. In reliance of the covenants, agreements, representations and warranties of Stanray contained herein, and subject to the terms hereof, Purchaser agrees:

(a) To purchase the Personality from Stanray for a Price of One Million Dollars, such Price *to be paid by the Purchaser in the form of a Promissory Note* and secured by a Security Agreement in the form and content of Exhibits D and D–1 hereto, *which Promissory Note and Security Agreement shall be delivered* by Purchaser to Stanray upon the making hereof, and which sale shall thereupon be consummated...." (emphasis supplied).

This contract explicitly provides that the execution and delivery of R.B.'s secured promissory note for $1,000,000 was intended by Abex and R.B. to constitute payment of the purchase price and consummation of the sale of the personalty. Indeed, the interoffice memorandum drafted by Canty to commemorate this agreement leaves little room for a contrary inference:

"RE: *Agreement of sale: Sale of the Remco, Indianapolis ("R–I") Assets to R.B. Manufacturing, Inc. ("RB") of Cheyenne, Wyoming*

The above Agreement (see Att. 1) was entered into in Indianapolis on Monday afternoon, December 20, 1976.

Under its terms:

A. The R–I inventories and equipment *were sold* to R.B. for a price of $1,000,000.00 pursuant to R.B.'s 7% Promissory Note, due April 30, 1977 (see Att. 2).

B. The R–I realty *is to be sold* on April 30, 1977, for a price of $500,000.00 in cash." Record at 636 (emphasis supplied).

While the purchase agreement may evince an intent to make the sale of the realty executory, the parties' conduct and the language of the contract itself demonstrate that this was not their intent with regard to the sale of the personalty. According to the terms which Abex itself specified and in which R.B. concurred, the sale of the personalty was consummated on December 20 upon R.B.'s delivery of its promissory note. Therefore, it was on this day that Vehling, as a matter of law, earned his commission.

Abex alternatively claims that its obligation to pay Vehling was contingent upon Abex receiving full payment from R.B. which event was expected to occur on April 29, 1977. Abex relies primarily upon Canty's memorandum as evidence of this condition. As earlier noted, only a clear and specific agreement to the contrary will negate the general rule that a broker earns, and is therefore entitled to his commission, once he effects a sale to the seller's satisfaction.

In construing written instruments, ambiguities arising from the very language used must be resolved as questions of law for the court. 12 C.J.S. *Brokers* § 118 (1938).

While certain language in the memorandum suggests that Abex's obligation to pay Vehling would not arise until R.B. fully paid the purchase price, there is no language which specifically makes the act of "earning a commission" contingent upon Abex's receipt of the entire sale price. It is significant that Abex explicitly characterizes the payment of Vehling's commission as an "obligation." The word obligation has been defined as:

"an act of obligating oneself to a course of action: a putting under a promise, vow, or oath, broadly: a formal and bind-

ing agreement or acknowledgement of a liability to pay a specific sum or do a specific thing; a duty arising by contract: a legal liability; a condition or feeling of being bound legally or ethically." Webster's Third New International Dictionary Unabridged (1976). *See also Helvering v. British-American Tobacco Co.* (1934) 69 F.2d 528, 530; *Daube v. U.S.* (1932) 1 F.Supp. 771, 772.

We also attach significance to the specific use of the word "until" in the inter-office memorandum. Use of this word rather than "unless" indicates mere delay; it is not a condition. As used in this context, i.e. coupled with the word "obligation," it is an adverb of time which simply postpones the time of possession and enjoyment; it does not negate the right to possession. *See Washington Publishing Co. v. Pearson* (1939) 306 U.S. 30, 59 S.Ct. 397, 402, 83 L.Ed. 470; *In Re Purdy's Will* (1928) 133 Misc. 217, 231 N.Y.S. 611; *English v. City of Long Beach* (1952) 114 Cal.App.2d 311, 250 P.2d 298, 303 (1952).

If the memorandum were construed as an attempt on Abex's part to limit its liability by making the "earning" of commission contingent upon actual receipt of cash from R.B., it fails for lack of definiteness and specificity sufficient to clearly counteract the operation of the rule that a broker earns and is entitled to his commission once he procures a sale contract consistent with the seller's terms. *See Schuler-Haas Electric Corp. v. Aetna Casualty & Surety Co.* (1975) 49 A.D.2d 60, 371 N.Y.S.2d 207, *aff'd,* 40 N.Y.2d 883, 389 N.Y.S.2d 348, 357 N.E.2d 1003.

Moreover, Abex has admitted that it entered into an oral contract with Vehling in which Abex agreed to pay him a 10% commission. It has been stated that a contract implies mutual obligations. *Fowler Utilities Co. v. Gray* (1907) 168 Ind. 1, 79 N.E. 897. The record is devoid of evidence that Vehling agreed to render his services as a broker gratuitously, and that the parties in good faith had not intended nor expected Vehling to be compensated. Absent such evidence, we are compelled to impute a promise to pay in consideration for Vehling's performance. Abex cannot admit that a binding oral contract existed without also conceding that it is bound and obligated under this contract. In light of these considerations, we are convinced that reasonable men cannot conclude that Vehling was not intended to "earn" his commission *until* Abex received full payment from R.B.

Even if the memorandum were to be construed as a limitation of some sort, it is at most a manifestation of the parties' intent to *postpone* Abex's performance of its duty to pay Vehling's commission to a time when there was sufficient cash to pay it. *See Schuler-Haas Electric Corp. v. Aetna Casualty & Surety Co., supra,* 371 N.Y.S.2d 207. Canty's use in his affidavit of phrases such as "until such time;" "as soon as;" and "when" corroborate our interpretation.

In this affidavit, Canty states:

"On or about the morning of December 21, 1976, Affiant met in the Indianapolis Athletic Club with Robert Vehling for a breakfast conference. At that time Affiant reiterated to Vehling, and Vehling did concur, that *as soon as R.B. paid in cash to Stanray Corporation the sum contemplated in the aforesaid agreement of sale ($1,500,000), Vehling would be entitled to a commission or fee of 10% thereon,* less the said realtor's commission.

At said conference Affiant and Vehling discussed when said cash was expected to be received from R.B., and accordingly when if at all, said funds would be due and payable from Stanray Corporation to Vehling. It was then understood and agreed that said commissions or fee *would not be payable in all likelihood, until the spring of 1977, when the sale was to be consummated, for the reason that R.B. might not be able to pay the cash to Stanray Corporation in the above amount ($1,500,000) until such time."* Record at 633 (emphasis supplied).

We now turn to the central question: Should the trial court have granted summary judgment for Vehling assuming a factual dispute as to when Vehling was to be compensated? Given that Vehling has

earned his commission, whether Vehling was to be paid on December 20, 1976, or on April 29, 1977, is not material because the answer to this factual question does not facilitate the resolution of the pivotal issue: whether Vehling should now receive his commission as a matter of law where the event upon which its payment was fixed did not, and may not, occur.

This court addressed a similar issue in *House v. Lesow* (1st Dist.1975) 167 Ind.App. 449, 339 N.E.2d 86 in which the Court affirmed the trial court's entry of summary judgment for plaintiffs who had sought to recover broker's commission for assisting in the sale of defendants' stocks. In *Lesow,* the plaintiff-appellant entered into an agreement with defendants which provided that the plaintiff would be paid a fee of 4% of the purchase price of the stock for services both in procuring the sale of the stock and in performing the legal services needed to consummate the transaction. A sale was effected between a buyer and the defendants-sellers for a consideration of ten million dollars, the bulk of which was to be paid over a five-year period in equal annual installments. The contract between the defendants-sellers and the buyer provided that the buyer would obtain an irrevocable letter of credit issued to sellers that would only be payable in the event that buyer defaulted on the third or fourth payment. The buyer defaulted on the fourth payment. The defendants instituted collection proceedings on the letter of credit and were eventually successful in receiving payment on the letter of credit.

The commission contract provided that:

"Compensation shall be payable to you *only as and when* the stockholders *receive payment of the purchase price, either in cash or in other property,* on one or more occasions, and in an amount equal to four per cent of the purchase price amount received on any particular occasion." *House v. Lesow, supra,* 339 N.E.2d at 86 (emphasis supplied).

The plaintiff in *House* had received the commission payments due for all payments that the sellers had collected, including the third payment. However, upon buyer's default, defendants informed the plaintiff that he would receive no further payments regardless of whether collection was made on the letter of credit. Defendants there argued that since their duty to pay plaintiff his commission depended upon their obtaining the purchase price directly from the buyers, defendants were discharged from their liability because they collected the fourth payment not from the buyer, but under the letter of credit.

The First District of this Court interpreted that commission contract as providing that although the amount of the commission was to be computed as a percentage of the purchase price to be paid, the payment of this amount was to be deferred until the sellers actually received payment of the purchase price. The issue was framed in this manner:

"It thus appears that the question in the case at bar is whether the future event has, or will ever happen, so that the commission that has been earned is now, or will ever become, presently due and payable." *House v. Lesow, supra,* 339 N.E.2d at 91.

In upholding the trial court's summary judgment for the appellee-broker, primary reliance was placed upon the reasoning articulated in *Lee v. Bossung* (1956) 127 Ind. App. 388, 138 N.E.2d 913. The facts in *Lee v. Bossung* are perhaps more analogous to those here. In that case, the commission contract provided:

"I, Loretta Bossung, do hereby agree and promise to pay to Lee & Krizman Realty, Highland, Indiana, the sum of Twelve Hundred ($1,200.00) Dollars at the time that Mr. & Mrs. Neely make the payment of $11,000.00 as provided in their Contract of Purchase dated this date, which payment is due on or before November 15, 1952." *Lee v. Bossung, supra,* 138 N.E.2d at 915.

The Neelys went into possession of the property under the contract terms; however, they subsequently failed to make the $11,000 payment due November 15, 1952 and shortly thereafter abandoned said prop-

erty. The sellers in *Lee,* as did Abex in this case, refused to pay the brokers their commission on the ground that such commission was "contingent upon payment by the Neelys of $11,000 on November 15, 1952, which payment was not and never will be made." *Lee v. Bossung, supra,* 138 N.E.2d at 916. In holding for the brokers, this Court stated:

"[t]he appellants (brokers) had *earned* the commission provided by the modified contract and the happening of a future event was fixed upon merely as a convenient time for the appellees to make payment thereof. *Under such circumstances if the future event does not or cannot happen as contemplated, the law implies a promise to pay within a reasonable time." Lee v. Bossung, supra,* 138 N.E.2d at 916 (emphasis supplied).

This position is consistent with the fundamental principle of agency that a principal has a duty to compensate his agent for services rendered under the agency contract. *See* 3 Am.Jur.2d § 238 (1962).

Even where the parties fail to expressly provide for the agent's compensation, a promise to pay such compensation has been implied as a matter of law:

"Unless the relation of the parties, the triviality of the services, or other circumstances, indicate that the parties have agreed otherwise, it is inferred that a person promises to pay for services which he requests or permits another to perform for him as his agent.
Comment:
a. ... The inference of a promise to pay may be rebutted by the closeness of the relation of the parties, as where a son, although above the age of minority, renders service for a parent; or by the fact that such services when rendered under like circumstances customarily are given without compensation.
. . . .
d. *Non-gratuitous services not paid for in money.* A person may act for compensation and not gratuitously although he receives no money or other things for his services, as where one

learning a trade or profession renders services in consideration of the opportunity offered him to gain skill. Likewise, the services of an agent whose compensation is contingent upon a condition which does not occur are not given gratuitously." Restatement (Second) of Agency § 441, Comment a, d (1958) (original emphasis).

Courts have stated that once a broker has fully performed his duties under the brokerage agreement, his right to receive commission may not be defeated by the buyer's eventual financial inability to perform. *Clark v. Corbly* (1953) 123 Ind.App. 438, 110 N.E.2d 309; *Winter v. Toldt, supra,* 108 A.2d at 650; 12 C.J.S. Brokers, § 85 (1938).

While the parties may have intended that Abex's performance of its duty to pay be delayed until a future event, they did not intend that Abex's duty to pay be absolutely conditioned upon the happening of this event. Therefore, as was the case in *House* and in *Lee,* this future event was fixed upon merely as a convenient time for Abex to pay Vehling since Abex would then have had the funds to pay him. As Abex has admitted, this event did not, and may not, occur as contemplated. Under such circumstances, the law imputes a promise to pay within a reasonable time. Inasmuch as this "reasonable time" period began to run in April 1977, we find that at this stage the period has long since elapsed.

We hold that Vehling's commission, earned on December 1976, is presently due and payable, and we therefore affirm the court's entry of summary judgment.

## II.

Having decided that Vehling is entitled to his broker's fee, we now broach the issue whether the court erred in denying him pre-judgment interest. We adhere to the principle enunciated by our Supreme Court in *New York, Chicago & St. Louis Railway Co. v. Roper* (1911) 176 Ind. 497, 96 N.E. 468, that the award of pre-judgment interest is founded upon the theory that the added interest is intended to fully compen-

sate the injured party for the loss suffered in being deprived of the use of money or its equivalent. Indeed, the term "interest" is in actuality a misnomer in that this amount is recoverable not as interest but as additional damages to provide full compensation. *See Fort Wayne National Bank v. Scher* (3d Dist.1981) Ind.App., 419 N.E.2d 1308, 1311.

Where the damages are complete and ascertainable as of a particular time, in accordance with fixed rules of evidence and established standards of valuation, an award of pre-judgment interest is warranted. *New York, Chicago & St. Louis Railway Co. v. Roper, supra,* 96 N.E. at 472; *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (3d Dist.1978) Ind.App., 372 N.E.2d 742, 750. In the case at bar, the amount recoverable by Vehling was 10% of the purchase price for the sale of the personalty, less the $9,500.00 already paid by Abex as an advance. This amount had been ascertainable before the trial court entered summary judgment. The court's failure to include in its *nunc pro tunc* order an award for pre-judgment interest constitutes error; we therefore reverse that portion of the trial court's judgment.

Pre-judgment interest is computed from the time the principal amount was demanded or due. *See Indiana Tel. Corp. v. Indiana Bell Tel. Co.* (2d Dist.1976) 171 Ind.App. 616, 358 N.E.2d 218, 229. Although we affirm the summary judgment because the trial court properly held Vehling was entitled to his commission as a matter of law, we must remand for the limited purpose of determining the time from which pre-judgment interest is to be computed. The parties disagree as to whether payment was due on December 20, 1976 or on April 29, 1977. Moreover, in light of our finding that, at the latest, this commission was due within a reasonable time after April 29, 1977, before the trial court can fix the point from which interest is to be computed, it may have to make the preliminary determination as to when this reasonable period elapsed, should the factfinder conclude that the amount was not due on either December 20 or April 29.

Cross-appellant Vehling also asks this Court to allow computation of pre-judgment interest at a compounded instead of a simple rate. Since cross-appellant did not preserve this issue in his cross-motion to correct errors, it is waived. However, we note that in *Indiana Tel. Corp. v. Indiana Bell Tel. Co.* (2d Dist.1977) 171 Ind.App. 638, 360 N.E.2d 610, our opinion on rehearing held that in the absence of evidence of a trade custom for the compounding of interest, or an express contractual provision calling for installments of interest payable at stated intervals, damages in the form of interest for delayed payment of a debt may not be compounded. Therefore, even without the operation of waiver, cross-appellant's request for a compounded interest rate would be denied.

For the foregoing reasons, we affirm in part, reverse in part, and remand this cause for proceedings consistent with this opinion.

BUCHANAN, C.J., and SHIELDS, J., concur.