Horace CAMPBELL, et al.,
Appellant–Defendant,

v.

Steve VENCEL, Appellee–Plaintiff.

No. 47A04–9108–CV–273.

Court of Appeals of Indiana,
Fourth District.

June 17, 1992.

Bruce A. Hewetson, Donovan, Emery & Hewetson, Bedford, for appellant-defendant.

Edward F. McCrea, McCrea & McCrea, Bloomington, for appellee-plaintiff.

CONOVER, Judge.

Defendants–Appellants Horace R. and Helen P. Campbell (Campbells) appeal the entry of summary judgment and damages in favor of Plaintiff–Appellee Steve Vencel (Vencel) for the Campbells' breach of a real estate listing contract with Vencel, a real estate broker.

We reverse.

The issues presented by this appeal are:

1. whether the Campbells were fraudulently induced to enter into the listing contract by broker Vencel, and

2. whether the Campbells entered into it by mistake.

The court *sua sponte* determines another issue must be discussed, namely:

3. whether Vencel is entitled to recover a real estate commission, prejudgment interest, attorney fees, and filing fees for the Campbells' alleged breach of the listing contract.

The facts here are undisputed. Brief of Appellee at 3. The Campbells owned a farm in Greene County which they had been attempting to sell for several years both through realtors, including Vencel, and by themselves when no listing contracts were outstanding. Being of advancing years, they wanted to retire. They themselves had posted a "for sale" sign and shown the farm to several interested parties at various times on their own when the farm was not listed with a broker. The Campbells considered four people of the many to whom they had shown their farm, including their grandson and Ivan Sparks, the ultimate purchaser, to be potential purchasers.

Vencel, a realtor, solicited the Campbells to again list the farm for sale with him in March, 1987. During negotiations, the Campbells told Vencel they had four potential buyers for the property and wanted them exempted from commission payment if sale to any one of them was consummated. Although they mentioned their grandson as one of the four, the Campbells refused to name the other three, including Sparks. Vencel orally agreed to exempt all four, but the written contract he prepared merely provided:

Q. FURTHER CONDITIONS: If grandson purchases all or part there shall be no real estate commission[.]

(R. 50). The Campbells then read the listing contract, a printed form approved by the Bloomington Board of Realtors whose blanks Vencel filled in with a ballpoint pen, and signed on March 4, 1987.

On April 2, 1987, the Campbells themselves sold the farm to Sparks, one of the four potential purchasers to whom they had shown the farm before signing with Vencel, for $114,000. Vencel in the meantime had produced no buyers. The Campbells then informed Vencel by telephone they had sold their farm to Sparks. Vencel later produced a contract to purchase the

Campbells' farm for $140,000, but the Campbells turned down the offer because it had been sold to Sparks. Vencel then sued the Campbells for his commission on the Sparks sale, attorney fees, prejudgment interest and other damages, based upon his March 7, 1987, listing contract with the Campbells.

The trial court entered summary judgment for Vencel and later awarded him a money judgment in the sum of $15,081.66, representing Vencel's commission on the Sparks sale, his one-third contingent attorney's fee, prejudgment interest, and filing fees in the trial court. The Campbells appeal.

In reviewing the grant of a motion for summary judgment, our standard of review is well settled. We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law. When a motion for summary judgment is granted, the non-moving party is denied his day in court; therefore, the trial court's decision must be carefully scrutinized on appeal. In reviewing the granting of a motion for summary judgment this court stands in the shoes of the trial court and applies the same applicable standard. *Progressive Constr. v. Ind. & Mich. Elec.* (1989), Ind.App., 533 N.E.2d 1279, 1282.

■ This case presents a curious appellate posture. Although the record unquestionably demonstrates the trial court committed reversible error by granting Vencel's motion for summary judgment and awarding him $15,081.66, appellants have failed to raise and argue the fundamental issue upon which we base reversal. Clearly, neither issue the Campbells raise has merit. They only argue (a) Vencel obtained the listing contract by fraud, or (b) they entered into it by mistake. Neither ground is sufficient to reverse the trial court. The record clearly demonstrates the questioned listing contract was entered into after arm's length negotiations and the Camp-

bells were given an opportunity to read and understand its contents. Without doubt the contract provides the only party to whom the Campbells could sell their farm without paying a broker's commission was their grandson. There was no fraud in the procurement because

> Every person is presumed to know the contents of the agreement which he signs, and has, therefore, no right to rely on the statements of the other party as to its legal effect.

*Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 764. Also, Mr. Campbell unequivocally testified he understood only sale to his grandson was commission-free under that agreement.

■ Further, while equitable relief may be granted where a contract has been entered into because of a mutual mistake of material fact, *Hancock v. Kentucky Cent. Life Ins. Co.* (1988), Ind.App., 527 N.E.2d 720, 723, *trans. denied*, it is axiomatic there was no such mistake here. The Campbells read and understood the contract's contents. There was no mistake. Thus, their second issue fails and our discussion would normally end at this point because those were all the issues the appellants presented to this court.

■ However, our discussion does not end here. Under the extraordinary circumstances present in this appeal, it cannot. When we deem it necessary, we may raise a fundamental issue *sua sponte*, although issues not raised or adequately briefed are normally treated as waived. *Castillo v. Ruggiero* (1990), Ind.App., 562 N.E.2d 446, 451, *trans. denied;* Ind. Appellate Rule 8.3(A)(7). As Judge Tremain said many years ago:

> The rule forbidding the discussion of points not originally suggested by appellant is made for the protection of the court, and only operates to excuse the court from considering questions that are not shown to have any material bearing upon the rights of the parties. Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs

of counsel for reasons upon which to base the decision, in order to do justice to the parties. (Citing cases). *White v. White* (1935), 208 Ind. 314, 196 N.E. 95, 96. We are not required to close our eyes to that which is apparent on the record. *Id.* Were we so limited, we would be frequently in the unhappy situation of "lending tacit approval to [precedent] palpably bad on its face, and this could only result in confusing the law and misleading the profession." *L.S. Ayres & Co. v. Hicks* (1942), 220 Ind. 86, 41 N.E.2d 195, 196; *Big Creek Stone Co., et al. v. Seward, et al.* (1895), 144 Ind. 205, 42 N.E. 464, *reh. denied,* 144 Ind. 205, 43 N.E. 5, 6. We are here confronted with such a situation, and must discuss the issue we raise because of it.

▋ The rights of a real estate broker are exclusively determined by the terms of his brokerage contract. The mere fact a broker has an exclusive right to sell property "would not entitle him to recover the commission he was to receive in the event he made a sale. Under such circumstances, his right of action, if one existed, would be for damages, resulting from a breach of the contract, and not for the amount earned in the performance of services thereunder." *Thomas v. Hennes* (1922), 78 Ind.App. 275, 135 N.E. 392, 395. In such case the broker may recover only his resulting damages, i.e., all money spent in advertising and showing the property together with the value of his time spent would be the measure of the broker's damages. *Brown v. Maris* (1958), 128 Ind.App. 671, 150 N.E.2d 760, 762. The broker must be the producing cause of a sale, or at least must furnish a customer who is ready, willing, and able to purchase the land on the terms the owner and the broker have agreed upon before he is entitled to recover his commission. *Thomas, supra,* 135 N.E. at 394. We must determine from the listing contract itself what Vencel's rights were.

▋ In this regard, the listing contract executed on March 7, 1987, provided:

This contract is entered into ..., in consideration of services to be performed. REALTOR is hereby appointed as the OWNER'S agent with irrevocable and exclusive right to sell the Property, within the period for the price and terms stated herein.

A. TERM: This Contract begins on the 4th[1] day of March, 1987, and ... [ends] on the 4th day of Sept., 1987, ...

B. PROFESSIONAL SERVICE FEE: OWNER agrees to pay REALTOR a fee of 7% of selling or exchanged price which shall be paid upon the occurrence of any of the following events:

1. At the time of closing the sale, when title to or an interest in the Property is transferred to a Purchaser; or

\* \* \* \* \* \*

3. At the time REALTOR procures a written offer to purchase from the Purchaser who is ready, willing, and able to purchase the Property according to the terms therein, but the OWNER refuses to accept the offer; or

4. At the time OWNER sells the Property to a Purchaser procured in whole or in part by the efforts of REALTOR, a cooperating Broker or the OWNER during the term of this Contract, if such sale occurs within 180 days after this Contract terminates; provided however, this paragraph # 4 shall not apply if this Contract terminates and the Property is listed exclusively with another licensed Broker.

C. PRICE: OWNER offers the Property for sale at a price of $150,000.

D. FINANCING: Said Property may be sold for cash or by using any of the following financing methods circled: (Conventional) (Insured Conventional) (FHA) (VA) (Assumption) (ARM) (Contract) (Other)

Q. FURTHER CONDITIONS: *If grandson purchases all or part there shall be no real estate commission* OWNER ACKNOWLEDGES THAT:

---

1. Underlined portions in text indicate blanks in form contract filled in by Vencel.

1. He has read and understands the contract.

2. This contract contains the entire agreement ...

4. This contract is binding upon the parties hereto, ...

5. He has received a copy of this contract.

6. If it becomes necessary for the REALTOR to retain an attorney or initiate any legal proceedings in order to secure payment of the aforesaid professional service fee, then, ..., the REALTOR shall also be entitled to recover court costs and reasonable attorney fees. [Signatures of Vencel and the Campbells].

■ A real estate broker's contract must be treated as a whole. *Brown, supra,* 150 N.E.2d at 764. As with any other contract, the primary object when doing so is to "give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof." *Coldwell Banker & Co. v. Karlock* (7th Cir.1982), 686 F.2d 596, 602; accord, *Brown, supra.* A listing agreement permitting a broker to sell property, but placing no obligation on him may be revoked at any time.[2] *McKenna v. Turpin* (1958), 128 Ind.App. 636, 151 N.E.2d 303, 306.

From the record before us it is clear Vencel did nothing with regard to selling this real estate prior to its sale to Sparks by the Campbells. Assuming it was an enforceable contract at that time (but see note 2), the essential question becomes what was Vencel's measure of damages for the Campbells' breach of the listing contract?

It is well settled that under such contracts the payment of a commission is de-

pendent upon the success of the broker's efforts, and not upon the amount of work done or expenses incurred by the broker. *Thomas,* 135 N.E. at 394. Since Vencel here produced no buyer ready, willing, and able to purchase the Campbell farm for the price and on the terms contained in the listing contract, Vencel may only recover resulting damages, i.e., all money spent in advertising and showing the property together with the value of his time spent in so doing. *Thomas, Brown, McKenna, supra.* Under the record now before us, Vencel incurred no such expenses prior to the Campbells' sale of their real estate to Sparks, and so is entitled to nothing.

■ Also, Vencel produced only an offer to purchase the farm for $140,000, not the $150,000 required by the listing contract during its term. Vencel never produced a buyer willing to buy the property "at and for the price and terms" stated in that contract. Generally, absent an agreement to the contrary, a broker earns his commission when he secures a buyer on the seller's terms. *Abex Corp. v. Vehling* (1983), Ind.App., 443 N.E.2d 1248, 1255. Thus, Vencel was not entitled to his commission nor to attorney fees, filing fees, or prejudgment interest.

Vencel filed a motion for entry of a money judgment against the Campbells. (R. 334). It requested judgment against them for:

(a) commission on the Sparks sale— $115,000 × 7% = $8,050,

(b) prejudgment interest for 4 years— $8,050 × 15% × 4 years = $3,220,

(c) one-third contingency attorney fees— [$8,050 + $3,220] $11,270 × ⅓ = $3,756.66, and

(d) trial court filing fees—$55,

---

2. An argument could be made the listing contract here is a *nudum pactum,* at worst, or unilateral in nature, at best, and unenforceable under the facts before us. As to consideration, his listing agreement merely states Vencel is appointed as the Campbells' agent "in consideration of services *to be* performed...." (Emphasis supplied). (R. 50). Under these terms, Vencel was not presently obligated to do anything which would have been a detriment to himself or a benefit to the Campbells, the minimum requirement for "promise for promise" consideration. Further, for the broker to be entitled to his commission under these circumstances, the listing agreement must have affirmatively provided the owner reserved unto himself the right of sale, but if he did, the broker was to be paid his fee the same as if he had found the purchaser himself. *Singleton v. O'Blenis* (1890), 125 Ind. 151, 25 N.E. 154, 156. However, so as not to unduly lengthen this opinion, we pass these questions without discussion.

totaling $15,081.66. (R. 334). That figure is the precise amount of the trial court's money judgment rendered herein. Because it obviously awards Vencel a commission, prejudgment interest, attorney fees, and court filing fees, that judgment is contrary to law.

Clearly, the ultimate purchaser Sparks was not procured through any effort expended by either Vencel or any cooperating broker. Nor was Sparks procured through any effort of the owners, the Campbells, "during the term of this Contract." This restriction specifically limits application of the clause regarding payment of a full commission. (R. 287).

Under the facts most favoring the Campbells, the only time the Campbells expended any efforts to procure Sparks as a purchaser of the farm was before they entered into the brokerage contract with Vencel.

Reversed and remanded for further proceedings consistent with this opinion.

Chezem, J., concurs.

Sharpnack, J., concurs with separate opinion.

SHARPNACK, Judge, concurring.

I concur in the result reached by the majority, but I cannot concur in their reasoning. The majority holds that Vencel is not entitled to a commission because he did not procure the party who eventually purchased the property. This holding is contrary to the express terms of the listing contract and the governing precedent of this state. However, there is evidence that the sale for which Vencel claims a commission falls outside the express terms of the listing contract.

The listing contract granted Vencel the irrevocable and *exclusive* right to sell the property from March 4, 1987 through September 4, 1987. The contract further provided that Vencel would be entitled to a commission:

"At the time OWNER sells the Property to a Purchaser procured in whole or in part *by the efforts of* REALTOR, a cooperating Broker *or the OWNER during the term of this Contract.*"

(Record, p. 287) (emphasis added). Thus, the contract expressly provided that Vencel (the realtor) was entitled to a commission even if the Campbells (the owners) sold the property through their own efforts.

This court has held on more than one occasion that a provision in a listing contract that gives a broker the right to collect a commission regardless of whose efforts procure the buyer is enforceable. *Sutton v. Roth, Wehrly, Heiny, Inc.* (1981), Ind. App., 418 N.E.2d 229, 233; *Brown v. Maris* (in Banc 1958), 128 Ind.App. 671, 676–677, 150 N.E.2d 760, 763. In *Sutton,* the property owner and the broker entered into a listing contract which provided that, if the property in question, a motel, was sold within ninety days of the expiration of the contract to any person with whom the broker, the owner, or their representatives had negotiations during the period of the exclusive listing contract, the broker would be entitled to a commission. An agent of the listing company showed the hotel to three men. This group decided against buying the motel. Some time later, the owner entered into negotiations with one of these men, David Nolan, without the aid of the listing agency. After the listing contract had expired, but before the ninety day extension period had expired, the owner sold the hotel to Nolan and his wife. The listing agency demanded its commission, and the owner refused.

The listing agency sued for its commission, and the trial court entered judgment in favor of the agency. On appeal, the owner asserted that the listing agency's damages were limited to the expenses which the agency incurred on behalf of the owner. The third district, through Judge Hoffman, wrote:

"The contract in the present case however expressly provides for payment to the [broker] even if it is not the cause of the sale. The only prerequisites for collection of the commission are: 1) the 'real estate is sold or exchanged within 90 days after the expiration of the term of this agreement' and 2) the sale is 'to any person, firm or corporation with whom during the exclusive period of this

listing you, your representatives [the broker] or myself or ourselves [Suttons] had negotiations relative to the purchase of said property for said price stated herein and upon terms acceptable....'

\* \* \* \* \* \*

Since the contract in the present case provided for a payment of commission even if the [broker] was not the essential cause of the sale, the commission itself is the proper measure of damages. The trial court committed no error in so instructing the jury."

*Sutton,* 418 N.E.2d at 233.

In *Brown,* the appellate court, sitting in banc, superseded its earlier holding that a broker was not entitled to a commission where the listing contract provided that the broker was entitled to a commission if, within ninety days of the expiration of the contract, the owner sold the property to a person to whom the broker had shown the property before the contract terminated. In finding that the broker was entitled to his commission, the court wrote:

"What we have said up to this point has reference to contracts wherein the owner merely gives the broker the exclusive right to sell certain real estate and promises to pay him a stipulated commission for doing so. It must be conceded, however, that two individuals, competent to contract, can make any sort of agreement they choose and if such agreement is supported by a valid consideration and is not contrary to public policy it will be binding on both. *Thus it is proper that an owner of real estate and a real estate broker should execute a contract wherein it is expressly stated that the broker will be paid a stipulated commission in the event of a sale within the time specified no matter whether it was effected by the broker or by the principal or by any other person.* The validity of such contract was recognized by the Supreme Court of this State in *Singleton v. O'Blenis,* 1890, 125 Ind. 151, 25 N.E. 154, 156....

\* \* \* \* \* \*

*The above decision indicates that Indiana, like those states listed in the* *annotation at 64 A.L.R. 416, recognizes the rule that the rights of the broker are controlled by the particular language of the contract and if a real estate broker has specifically agreed to pay his broker a commission regardless of the circumstances under which the property involved is sold such a contract is supported by sufficient consideration and is enforceable."*

*Brown,* 128 Ind.App. at 676–677, 150 N.E.2d at 763 (emphasis added).

*Sutton* and *Brown* make it clear that a listing contract may grant a broker the right to a commission even if the broker did nothing to contribute to the sale of the property. In this case Vencel would have had an enforceable right to a commission for the sale of the Campbells' property if the sale had fallen within the terms of the commission provisions of the listing agreement. The evidence establishes that the sale did 'not fall within the terms of contract, however.

The commission clause states:

"At the time OWNER *sells* the Property to a Purchaser procured in whole or in part *by the efforts of* REALTOR, a cooperating Broker or the OWNER *during the term of this Contract."*

(emphasis added). This language is ambiguous. It can mean that the broker is entitled to a commission for any sale which takes place during the term of the contract or it can mean that the broker is entitled to a commission for any sale procured by the efforts of any party if those efforts occurred during the term of the contract. Vencel would be entitled to a commission under the former interpretation because the evidence shows that the sale took place during the term of the contract. He would not be entitled to a commission under the latter interpretation because there is no evidence that the Campbells engaged in any efforts to sell the property after they entered into the listing contract with Vencel; indeed, the evidence shows that they solicited the sale to the eventual buyer before entering the listing contract with Vencel.

It has long been the law that ambiguous terms in a contract are to be construed most strongly against the party who prepared or employed the ambiguous words. *Smith v. Sparks Milling Co.* (1942), 219 Ind. 576, 603, 39 N.E.2d 125, 135. In this case, this rule means that the contract should be construed to mean that Vencel was entitled to a commission only if he, the Campbells, or some other party made efforts to effect a sale during the pendency of the listing contract. Because there is no evidence that anyone made any efforts to solicit the sale during the pendency of the agreement, I believe that the sale falls outside the terms of the commission clause, and I concur with the majority's conclusion that the trial court erred in awarding Vencel a commission.

For the reasons stated above, I concur in the result reached by the majority.