**Donn BISHOP, d/b/a Century 21 Donn Bishop Real Estate, Appellant–Plaintiff,**

v.

**Robert M. SANDERS and Marian E. Sanders, Appellees–Defendants.**

**No. 36A05–9302–CV–38.**

Court of Appeals of Indiana, First District.

Nov. 30, 1993.

Rehearing Denied Jan. 28, 1994.

David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for appellant-plaintiff.

Thomas Haley, Haley & Farrow, Seymour, for appellees-defendants.

BAKER, Judge.

Appellant-plaintiff Donn Bishop, d/b/a Century 21 Donn Bishop Real Estate (Century 21), appeals a negative judgment in favor of appellee-defendants Robert and Marian Sanders, in his action to recover a real estate commission.

## ISSUES

Century 21 raises two issues which we restate as:

I. May a broker enforce a commission under a real estate listing contract where the broker has not procured the vendor's buyer?

II. Does the sale to the buyer fall outside the exclusion clause in the listing contract?

## FACTS

On May 3, 1991, the Sanders executed an exclusive listing contract with Century 21. Paragraph B of that contract provided:

OWNER agrees to pay principal broker a fee of seven percent which shall be paid upon the occurrence of any of the following events: ... 4. At the time OWNER sells the Property to a Purchaser procured in whole or in part by the efforts of principal broker, a cooperating Broker or the OWNER during the term of the Contract, if such sale occurs within ___ days after this contract terminates....

Record at 85. Under the contract, Century 21 could also recover court costs and attor-

ney's fees if successful in an action to recover a commission. The contract also provided "This listing contract excludes Ruth Kennedy for [a] two week period starting today's date." The listing contract expired on September 3, 1991.

On June 21, 1991, Ruth Kennedy made a written offer to purchase the Sanders' home. On August 19, 1991, Kennedy and the Sanders completed the sale.

Century 21 filed suit for its commission. Issuing findings of fact and conclusions of law, the trial court denied Century 21's claim, stating:

> 1. The case of Campbell et. al. [sic] vs Vencel (1992), 594 N.E.2d 807 is the controlling law in the case at bar....
>
> 3. Paragraph B(4) [of the listing contract] is further limited by language in the Listing Contract which states, "This listing contract excludes Ruth Kennedy for a two week period starting today's date."
>
> 4. The Plaintiffs failed to prove by a preponderance of the evidence either that the Plaintiff procured the buyer or that the Defendants procured the buyer after May 17, 1991.

Record at 72. Century 21 appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ When a trial court enters gratuitous findings of fact and conclusions of law, the specific findings made control as to the issues they cover, and the general judgment controls as to other issues. *Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 666, *trans. denied.* We will affirm the general judgment on any legal theory for which there is a factual basis. *Id.* We will set aside specific findings or conclusions only where they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* at 665. We do not reweigh evidence, and we consider only that evidence which supports the trial court's judgment. *Id.* at 666. Where the trial court did not explicitly find facts nec-

essary to support its judgment, we assume the trial court so found. *Wolff v. Slusher* (1974), 161 Ind.App. 182, 188, 314 N.E.2d 758, 762.

#### II. Broker Procuring Buyer

■ Century 21 argues that it did not have to procure the purchaser in order to earn a commission under the terms of the listing contract. In rejecting Century 21's claim, the trial court relied upon *Campbell v. Vencel* (1992), Ind.App., 594 N.E.2d 807, *rev'd in part,* Ind., 604 N.E.2d 601. Our supreme court vacated the part of the Court of Appeals' decision which required a broker to be the procuring cause of a sale or to produce a buyer ready, willing, and able to purchase the property in order to earn its commission. *Campbell*, 604 N.E.2d at 602.

Indiana law has long held that a broker earns its commission when it causes a sale or procures a buyer ready, willing, and able to purchase the property. *Fischer v. Bell* (1883), 91 Ind. 243, 244–45. However, Indiana law has also long held that a buyer is free to contract with a broker so that the broker may, under the contract terms, receive its commission by means other than by procuring a sale or buyer. *Lane v. Albright* (1874), 49 Ind. 275, 279. Therefore, unless the parties provide otherwise, a broker earns its commission when it procures a buyer ready, willing, and able to purchase, or when it procures a buyer with whom the vendor contracts or to whom the vendor sells. *See Wilson v. Upchurch* (1981), Ind.App., 425 N.E.2d 236, 238. However, Indiana courts will enforce specific provisions in a listing contract which allow a broker to earn a commission under other circumstances.

Here, the Sanders agreed to pay Century 21's commission even if the Sanders sold their home without Century 21's efforts during the listing period. The Sanders sold the house to Kennedy on August 19 before the listing period expired. The record is unclear whether Century 21 assisted in the sale of the house to Kennedy. Under the terms of the parties' exclusive listing contract, Century 21 may earn a commission

even though it did not procure Kennedy as the buyer.

### III. The Exclusion Clause

Century 21 argues that the evidence does not support the trial court's finding that it did not prove the Sanders procured Kennedy as a buyer after the exclusion expired on May 17, 1991, and, therefore, that the exclusion clause does not apply to the Sanders' sale.

The Sanders argue that the exclusion clause is ambiguous. A provision in a contract is ambiguous only if reasonably intelligent people could honestly find its provisions susceptible to more than one interpretation. *P.C. Management, Inc. v. Page Two, Inc.* (1991), Ind.App., 573 N.E.2d 434, 438. Interpreting the provision "this listing contract excludes Ruth Kennedy for [a] two week period starting today's date," reasonable minds could at least differ over the meaning of "excludes" and what conduct the provision "excludes". Because the provision is susceptible to more than one reasonable interpretation, it is ambiguous.

When interpreting ambiguous provisions, we must treat the contract as a whole so as to harmonize all words and phrases therein to best give effect to the parties' intentions at the time they entered the contract. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320.

The parties proffer several interpretations of the exclusion clause. One prohibits Kennedy from purchasing, agreeing to purchase, or otherwise negotiating over the Sanders' home for two weeks. Another would allow the Sanders to negotiate freely with Kennedy during those two weeks and any fruits of those negotiations would be exempt from the provisions of the listing agreement, including commission provisions. A third potential interpretation allows the Sanders to escape the provisions of the listing contract only if they completed the sale with Kennedy during those two weeks.

When looking at the entire listing contract, we conclude that the purpose of the exclusion clause was to exempt the Sanders from paying Century 21 a commission despite engaging in some activity with Kennedy during those two weeks. A question remains, however, concerning what conduct, at what time, qualifies for the exclusion provision.

The Sanders invite us to rely upon *Wachtel v. Harkless* (1942), 112 Ind.App. 279, 44 N.E.2d 510, for the proposition that a mere introduction to a subsequent buyer is sufficient to "procure" that buyer, and since the Sanders found Kennedy as a potential buyer before the expiration of the two week period, that the later sale to Kennedy allows the Sanders to avoid paying a commission. To do so would render the exclusion clause useless. The fact that Kennedy's name appears on the face of the listing contract clearly indicates that the Sanders knew Kennedy was a potential purchaser before they signed that contract. *Wachtel* is therefore inapposite, because the exclusion clause could not have meant that the Sanders do not have to pay a commission if they introduce themselves to Kennedy during the two week period and later sell to her.

We must read existing law into applicable contracts. *Lutz v. New Albany City Plan Comm'n* (1951), 230 Ind. 74, 83, 101 N.E.2d 187, 191; *Ethyl Corp. v. Forcum–Lannom Assoc.* (1982), Ind.App., 433 N.E.2d 1214, 1220. Were the tables turned, and the Sanders had employed Century 21 with a brokerage agreement providing only "Century 21 has until May 17, 1991 to sell our house," Century 21 would earn its commission if it procured a buyer ready, willing, and able to purchase the home before May 17. *See Wilson*, at 238. This principle logically extends to this exclusion clause. Therefore, we interpret the exclusion clause to mean the Sanders did not have to pay Century 21 a commission if Kennedy was ready, willing, and able to purchase their house before May 17, 1991.

The Sanders also invite us to employ the cardinal rule that we construe a contract against its drafter. *Falley v. Giles* (1867), 29 Ind. 114, 115; *Boswell*

*Grain and Elevator, Inc. v. Kentland Elevator and Supply, Inc.* (1992), Ind.App., 593 N.E.2d 1224, 1227. We apply this rule, however, only when all other rules of construction fail. *Indiana–Kentucky Elec. Corp. v. Green* (1985), 476 N.E.2d 141, 146, *trans. denied.* Having employed other rules of construction to interpret the exclusion clause, we need not avail ourselves of this one.

 The ultimate conclusion turns on the date when Kennedy was ready, willing, and able to purchase the Sanders' house. The trial court found Century 21 had not proved that the Sanders had procured Kennedy as a buyer after May 17, 1991. In order to affirm the trial court's judgment, we would have to assume that the trial court also found that Century 21 had not proved that Kennedy was not a ready, willing, and able buyer before May 17, 1991. *See Wolff,* 161 Ind.App. at 188, 314 N.E.2d at 762.

Kennedy herself testified that before the parties' executed the listing contract, she did not believe that she could afford the Sanders' home, and that her bank discouraged her from buying. Record at 114, 121. Kennedy also testified that when she decided to purchase the property, she promptly made the Sanders an offer to purchase on June 21, 1991. Record at 117.

Since Kennedy had not decided to purchase the property before May 17, 1991, it was impossible for her to have been ready and willing to buy during the exclusion period. Since she did not obtain bank financing, Kennedy had to negotiate with the Sanders to purchase the house on contract over time. Kennedy and the Sanders did not negotiate the terms of this contract until June 21, so she was also not able to buy any earlier. In addition, there is no contrary evidence in the record to suggest that Kennedy could have or would have purchased the Sanders' home prior to May 17, 1991.

Since Kennedy was not ready, willing, and able to purchase the Sanders' home before May 17, 1991, the exclusion clause did not apply to the contract of sale executed June 21, 1991 and completed August 19, 1991. Under the terms of the listing contract, the Sanders owe Century 21 $4,893 for its commission, court costs, and reasonable attorney's fees. We remand for the trial court to compute court costs and reasonable attorney's fees, and to enter judgment in favor of Century 21.

Judgment reversed and remanded for determination and assessment of attorney's fees and costs.

NAJAM and FRIEDLANDER, JJ., concur.